IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

_____

No. 13-0764

_____

FILED

November 25, 2014
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

QUICKEN LOANS, INC.,
Defendant Below, Petitioner

v.

LOURIE BROWN and MONIQUE BROWN,
Plaintiffs Below, Respondents

_____

Appeal from the Circuit Court of Ohio County
The Honorable David J. Sims, Judge
Civil Action No. 08-C-36

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: April 8, 2014
Filed: November 25, 2014

Thomas R. Goodwin, Esq.
Johnny M. Knisely, Esq.
Goodwin & Goodwin, LLP
Charleston, West Virginia
Counsel for the Petitioner

James G. Bordas Jr., Esq.
Jason E. Causey, Esq.
Bordas & Bordas, PLLC
Wheeling, West Virginia
Counsel for the Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE LOUGHRY concurs in part, dissents in part, and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "Costs" within the meaning of Rule 24 of the West Virginia Rules of Appellate Procedure include attorney fees when "costs" are defined as including attorney fees in any statute applicable to the case that allows for the recovery of the costs of a proceeding.

2.      Pursuant to Rule 24 of the West Virginia Rules of Appellate Procedure, attorney fees and costs may be awarded for appellate proceedings by either this Court or by the trial court following the direction of this Court. Although this Court has the authority to set the amount of an attorney fee award, this Court may, in its discretion, instead direct the trial court to determine the amount of the appropriate attorney fee award on remand.

3.      Attorney fees and costs awarded under W. Va. Code § 46A-5-104 (1994) of the West Virginia Consumer Credit and Protection Act are compensatory in nature and shall be subject to offset by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.

i

Benjamin, Justice:

This is the second time this case has been before the Court. The case was first brought by plaintiffs below and respondents herein, Lourie Brown ("Plaintiff") and Monique Brown, against defendant and petitioner herein, Quicken Loans, Inc. ("Quicken"), in the Circuit Court of Ohio County, Judge Arthur M. Recht presiding. Plaintiff alleged that Quicken committed common law fraud and violated provisions of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), as set forth in Chapter 46A of the West Virginia Code, in connection with a loan agreement between Quicken and Plaintiff.[1] Following a bench trial, the circuit court entered judgment in favor of Plaintiff. Quicken appealed that judgment to this Court.

We decided *Quicken Loans, Inc. v. Brown* (*Quicken I*), 230 W. Va. 306, 737 S.E.2d 640 (2012), on November 21, 2012, affirming the trial court's order, in part, and reversing, in part. The reversal was premised on the following conclusions: the circuit court improperly cancelled Plaintiff's obligation to repay the loan principal; the circuit court failed to support its $2,168,868.75 punitive damages award with the analysis required by *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991); and the circuit court failed to offset the compensatory damages award against Plaintiff's

---

[1] The loan was secured by property owned by Monique Brown. The parties represent that Monique Brown is a named party herein only because she is the owner of the property securing the loan. *Quicken Loans, Inc. v. Brown*, 230 W. Va. 306, 313 n.3, 737 S.E.2d 640, 647 n.3 (2012).

1

pretrial settlement with defendants who did not proceed to trial. We remanded the case to the circuit court for further proceedings consistent with our opinion.

Following remand, the circuit court, Judge David J. Sims presiding,[2] entered an Opinion and Order on June 18, 2013. Quicken now appeals that order, alleging the circuit court did not comply with the direction provided by this Court. After a thorough review, we reverse and again remand this matter to the circuit court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because we set forth a comprehensive rendition of the underlying facts in *Quicken I*, 230 W. Va. at 312–18, 737 S.E.2d at 646–52, we proceed by providing a brief summary of those facts here. On July 7, 2006, Plaintiff entered into a loan agreement with Quicken. The loan totaled $144,800, which was secured by Monique Brown's home. Plaintiff defaulted on the loan after only two payments, and Quicken instituted foreclosure proceedings. Plaintiff then filed suit against Quicken, alleging that Quicken violated the following provisions of the WVCCPA: unconscionability, W. Va. Code §

---

[2] Judge Recht retired prior to remand. Following his retirement, Judge Recht served as a senior status judge.

2

46A-2-121 (1996)[3]; unfair and deceptive acts, W. Va. Code § 46A-6-104 (1974)[4]; and

illegal balloon note, W. Va. Code § 46A-2-105 (1974).[5] Plaintiff also claimed breach of

---

[3] *See infra* note 11.

[4] W. Va. Code § 46A-6-104 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va. Code § 46A-6-102(7) (2005) provides a nonexclusive list of acts that constitute "unfair methods of competition and unfair or deceptive practices," including the following:

> (K) Making false or misleading statements of fact concerning the reasons for, existence of or amounts of price reductions;
> (L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;
> (M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;
> (N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive . . . .

[5] W. Va. Code § 46A-2-105 states, in pertinent part:

(continued . . .)

the covenant of good faith and fair dealing, fraud,[6] and illegal appraisal pursuant to W.

Va. Code § 31-17-8(m)(8) (2002).

In addition to bringing this action against Quicken, Plaintiff also filed suit

against Appraisals Unlimited, Inc.; an appraiser, Dewey Guida; and John Doe Note

---

(2) With respect to a consumer credit sale or consumer loan whenever any scheduled payment is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, any writing purporting to contain the agreement of the parties shall contain the following language typewritten or printed in a conspicuous manner. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: Followed, if there is only one installment which is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, by: AN INSTALLMENT OF $............... WILL BE DUE ON ............... or, if there is more than one such installment, by: LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS: (The amount of every such installment and its due date shall be inserted).

[6] The elements of fraud are set forth in syllabus point 1 of *Lengyel v. Lint*, 167 W. Va. 272, 280 S.E.2d 66 (1981):

The essential elements in an action for fraud are: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." *Horton v. Tyree*, 104 W. Va. 238, 242, 139 S.E. 737 (1927).

4

Holder.[7] Appraisals Unlimited, Inc. and Mr. Guida settled with Plaintiff prior to trial for $700,000. The only defendant to proceed to trial was Quicken.

The circuit court, Judge Arthur M. Recht presiding, conducted a six-day bench trial. In its February 25, 2010, order, the court found in favor of Plaintiff on all of her claims except the claim for breach of the covenant of good faith and fair dealing. The court determined that the Note and Deed of Trust were unenforceable as a matter of law. The court did not order Plaintiff to repay the loan principal, and the court awarded $17,476.72 in restitution to Plaintiff.

A subsequent bench trial was conducted on September 1, 2010, to decide awards of attorney fees and costs and punitive damages. In its February 17, 2011, order, the circuit court awarded $596,199.89 to Plaintiff in attorney fees and costs. The court also awarded $2,168,868.75 in punitive damages. The multiplier used by the circuit court in calculating the punitive damages award was 3.53. Quicken's post-trial motion to offset the compensatory damages award against Plaintiff's $700,000 pretrial settlement was denied by order entered May 2, 2011.

---

[7] *Quicken I*, 230 W. Va. at 318 n.25, 737 S.E.2d at 652 n.25, explains that "John Doe Note Holder" refers to the party Plaintiff claimed was the holder of the loan. At the time the suit was filed, Plaintiff had not identified the party.

Quicken appealed both the February 25, 2010, order and the February 17, 2011, order to this Court. In the opinion we issued, *Quicken I*, we determined that with regard to the fraud allegations, the circuit court did not err in finding that Quicken had committed fraud by failing to disclose the amount of the balloon payment in the loan agreement. We also determined that the circuit court did not err in finding that Quicken had falsely promised to refinance Plaintiff's loan and that Plaintiff was justified in having relied on that promise. Furthermore, we agreed with the circuit court that Quicken had induced Plaintiff into entering into the loan through unconscionable conduct, that the loan agreement included unconscionable terms, and that the loan was itself unconscionable. We affirmed the circuit court on all of those points.

In addition to challenging the circuit court's fraud and unconscionability findings, Quicken contested the circuit court's use of attorney fees and costs in calculating punitive damages. We explained in syllabus point 11 in *Quicken I*, 230 W. Va. 306, 737 S.E.2d 640, that the attorney fees and costs, when awarded pursuant to the WVCCPA, are properly considered compensatory damages for the purpose of calculating punitive damages. Thus, we concluded that because the attorney fees and costs were properly awarded under the WVCCPA, the circuit court did not err by using attorney fees and costs to calculate the punitive damages award.

We determined that the circuit court lacked the authority to cancel the Plaintiff's loan obligation. We also determined that the circuit court failed to adequately support and justify its punitive damages award because it failed to analyze the award as required by *Garnes*, 186 W. Va. 656, 413 S.E.2d 897. Additionally, we concluded that the circuit court erred by failing to offset the compensatory damages award by the $700,000 pretrial settlement amount. We reversed on these points, remanding the case to the circuit court.

After we filed *Quicken I*, we issued the following mandate on December 24, 2012:

> Pursuant to Revised R.A.P. 26, the opinion previously issued in the above-captioned case is now final and is hereby certified to the Circuit Court of Ohio County and to the parties. The decision of the circuit court is hereby affirmed, in part; reversed, in part; and remanded with directions, and it is hereby ordered that the parties shall each bear their own costs. The Clerk is directed to remove this action from the docket of this Court.

The parties submitted briefs to the circuit court regarding their positions on the matters remanded. The circuit court, Judge David J. Sims presiding, held a hearing on April 9, 2013, to discuss the proper procedure moving forward. The court addressed the parties during the hearing as follows:

7

[A]s you all know, I had written a letter to the Supreme Court and suggested that Judge Recht[8] ought to continue on this case since he heard all of the evidence.

The Chief Justice sent me a letter and said that, no, I should handle the matter on remand, which -- um -- I'm not sure exactly what it is the Court expects me to do.[9] So, I'm going to ask you all what you all expect me to do.

Um -- one is -- um I don't know if the Court expects me to make a determination as to what Judge Recht's analysis and findings were, or if the Court expects me to make a determination independently by reviewing the transcripts and the exhibits submitted.

If I'm expected to do it independently, then the next question is, can I review the evidence and find that punitive damages are or are not justified in this case? And if I do find that they're justified, do I have to award the same amount that Judge Recht did, or am I free to award a lesser or greater amount?

(Footnotes added.) On the issue of punitive damages, counsel for Plaintiff advised the court that he believed the circuit court had the authority to increase the original damages award, but that he did not think the court had the authority to reduce the award. Counsel for Quicken answered affirmatively when asked by the court if he believed the court

---

[8] *See supra* note 2.

[9] The circuit court's docket sheet indicates that three letters passed between the circuit court and then-Chief Justice Benjamin. The docket sheet states that the first letter, dated March 12, 2012, was sent from Judge Sims to Chief Justice Benjamin, requesting that Judge Recht be assigned to handle the matter on remand. According to the docket sheet, the second letter, dated March 28, 2012, was sent from Chief Justice Benjamin to Judge Sims, stating that the matter should remain on Judge Sims's docket. The docket sheet lists that the third letter, dated April 1, 2013, was sent from Judge Sims to Chief Justice Benjamin "seeking guidance from the Supreme Court." The docket sheet does not indicate that the circuit court received a response to the third letter, and none of the letters described above were included in the appendix record submitted to this Court.

should do an independent analysis of the record to determine and set whatever award the court believed was appropriate.

The circuit court entered an Opinion and Order on June 18, 2013. In a footnote in that order, the circuit court stated:

> This Court, as directed by the Supreme Court, obtained from counsel for the parties, copies of the complete transcripts of the trial and the December 1, 2009 hearing, along with the exhibits admitted into evidence at the trial. This Court has read the relevant trial transcripts and admitted exhibits. As directed by the Supreme Court,[10] this Court is making an independent determination as to whether punitive damages were warranted by the evidence presented at the trial of this matter, and, if warranted, the amount of punitive damages. This Court is <u>not</u> bound by Judge Recht's prior rulings on these issues.

(Footnote added.) The order then proceeded by addressing the three issues presented on remand: Plaintiff's obligations under the loan, an analysis of punitive damages, and offset.

The circuit court determined that it had the authority to refuse to enforce the Note and Deed of Trust, finding that Plaintiff had no legal obligation to repay the Note and that the Deed of Trust should remain a valid lien on the property. Under this arrangement, Quicken would receive the net proceeds from the eventual sale of the

---

[10] *See supra* note 9.

property, should the property ever be sold, up to the principal amount of the loan, $144,800, assuming the property sold for that amount or more.

The circuit court recalculated the amount of compensatory damages to which Plaintiff was entitled. It concluded that she should receive $116,276.72, "being the total of the restitution award previously made in the amount of $17,476.72, and being the difference between the original loan amount ($144,800.00) and the legitimate appraised value of the home ($46,000.00) in the amount of $98,800." The court further awarded Plaintiff attorney fees and costs in the amount of $875,233.44, increasing Judge Recht's previous award of $596,199.89 by $279,033.55. The court increased the award to compensate Plaintiff for attorney fees and costs expended during the *Quicken I* appeal and the post-appellate proceedings. The court concluded that Quicken was not entitled to have the amount of attorney fees and costs awarded offset by the $700,000 pretrial settlement; however, it did order that the compensatory damages awarded, $116,276.72, be offset by the pretrial settlement.

Finally, the circuit court conducted a *Garnes* analysis and determined that punitive damages were warranted. Using the new compensatory damages amount plus the revised attorney fees and costs amount, the court applied the same 3.53 multiplier used in the first proceedings before the circuit court to award $3,500,000.00 in punitive damages

to Plaintiff. The new punitive damages amount is an increase of $1,331,131.25 from the original amount, $2,168,868.75, ordered by Judge Recht.

Quicken now appeals the circuit court's June 18, 2013, order to this Court.

## II. STANDARD OF REVIEW

Quicken asserts eleven assignments of error in this appeal. Because of the complexity of the issues in this case, and because there are multiple standards of review that apply to those issues, we will discuss each of the appropriate standards in conjunction with our analysis of the individual issues.

## III. ANALYSIS

Before examining the assignments of error, we find it prudent to first discuss the law of the case doctrine, the mandate rule, and the effect of our remand following *Quicken I*. In *State ex rel. Frazier & Oxley, L.C. v. Cummings*, we said:

> The law of the case doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal."

214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003) (quoting 5 Am. Jur. 2d *Appellate Review* § 605 (1995)). In situations like this one where a case has been remanded to the

trial court following an appeal, the mandate rule is implicated. *Id.* Under the mandate rule,

> [a] circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed.

Syl. pt. 1, *Johnson v. Gould*, 62 W. Va. 599, 59 S.E. 611 (1907) (quoted in *Frazier & Oxley*, 214 W. Va. at 808, 591 S.E.2d at 734). In other words, "when this Court's decision of a matter results in the case being remanded to the circuit court for additional proceedings, our mandate controls the framework that the circuit court must use in effecting the remand." *Frazier & Oxley*, 214 W. Va. at 809, 591 S.E.2d at 735. "This 'mandate rule' is the specific application of the law of the case doctrine." *Jones v. Lewis*, 957 F.2d 260, 262 (6th Cir. 1992) (citing *Piambino v. Bailey*, 757 F.2d 1112, 1120 (11th Cir. 1985)); *Hawkes v. IRS*, 507 F.2d 481, 482 (6th Cir. 1974) ("In deciding whether the District Court properly followed our directions on remand, we consider whether it properly interpreted our mandate . . . .").

In determining the Court's instruction for purposes of the mandate rule, the Court's mandate must "be read and construed together with the opinion or memorandum decision in the case." W. Va. R. App. P. 26(b); *see also* 5 Am. Jur. 2d *Appellate Review* § 731 (2014) ("In construing a mandate, an appellate court considers the opinion the

12

mandate purports to enforce."). We held in syllabus point 3 of *Frazier & Oxley*, 214 W. Va. 802, 591 S.E.2d 728, that

> [u]pon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.

Appellate remands are either "general" or "limited." "A general remand broadly remands the case and 'when a cause is broadly remanded for a new trial all of the issues are opened anew as if there had been no trial, and the parties have a right to amend their pleadings as necessary.'" *Id.* at 809, 591 S.E.2d at 735 (quoting *Overton Constr. Co. v. First State Bank*, 688 S.W.2d 268, 269 (Ark. 1985)); *see also* 5 Am. Jur. 2d *Appellate Review* § 735 (2014) ("[W]here the appellate court remands for further proceedings without limiting what the proceedings were to be, the trial court on remand has the right to consider and rule on the entire case on remand."). A limited remand "'prohibit[s] relitigation of some issues on remand, or direct[s] that only some expressly severed issues or causes may still be litigated.'" *Frazier & Oxley*, 214 W. Va. at 809, 591 S.E.2d at 735 (quoting *Cherokee Water Co. v. Ross*, 698 S.W.2d 363, 366 (Tex. 1985)). "Under a limited remand, the court on remand is precluded from considering other issues, or new matters, affecting the cause." *Id.* (internal quotation omitted); *see also* 5 Am. Jur. 2d *Appellate Review* § 736 (2014) ("Where a remand limits the issues for determination, the court on remand is precluded from considering other issues, or new matters, affecting the

13

cause." (Footnote omitted.)). "[W]hen the further proceedings are specified in the mandate, the district court is limited to holding such as are directed." *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 971 (10th Cir. 1991) (quoting 1B J. Moore, J. Lucas, T. Currier, *Moore's Federal Practice* ¶ 0.404[10] (1998)); *see also* 5 Am. Jur. *Appellate Review* § 736 (2014) ("When a case is remanded for a specific act, the entire case is not reopened, but rather the lower tribunal is only authorized to carry out the appellate court's mandate, and the trial court may be powerless to undertake any proceedings beyond those specified." (Footnote omitted.)). Thus, when the Court orders a limited remand, "the lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void." 5 Am. Jur. *Appellate Review* § 736 (2014).

In *Quicken I*, we affirmed, in part; reversed, in part; and remanded the case with directions. Our remand limited the issues for determination; we directed that the circuit court return the parties to the status quo as nearly as possible with regard to the cancellation of the loan principal, that the court conduct a proper analysis under *Garnes*, and that the court offset the compensatory damages award against Plaintiff's pretrial settlement with Quicken's codefendants. We did not remand the case for a new trial. Having examined our mandate and every part of our opinion in *Quicken I*, we determine that the remand was a limited remand.

14

Because the assignments of error can be allocated to one of the three issues—the parties' obligations under the loan, awards, and offset—we will proceed by analyzing the issues raised by Quicken within each of those three categories.

## A.  Obligations Under the Loan

In *Quicken I*, Quicken challenged the circuit court's authority to cancel Plaintiff's obligation to repay the $144,800 loan principal. *Quicken I*, 230 W. Va. at 325, 737 S.E.2d at 659. We agreed with Quicken that the circuit court did not have the authority to cancel the loan obligation, concluding "that although the circuit court had the authority to refuse to enforce the Note and Deed of Trust in this case pursuant to the provisions of West Virginia Code § 46A-2-121,[11] the clear language of the statute simply

---

[11] W. Va. Code § 46A-2-121 (1996) states:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
> (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
> (b) Any term or part of the agreement or transaction to have been unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.
> (2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be

(continued . . .)

15

does not allow the court to cancel Plaintiff's debt obligation." *Id.* at 327, 737 S.E.2d at 661 (footnote added). We instructed: "[A] balancing of the equities requires that the parties be returned to the status quo as nearly as is possible." *Id.* at 328, 737 S.E.2d at 662.

Following remand, the circuit court stated in its June 18, 2013, order that, in light of this Court's conclusion in *Quicken I*, it "must now fashion a proper and lawful remedy to address the conclusive findings that the loan terms and the loan product in question were unconscionable and in violation of West Virginia law." The court explored the positions of the parties, noting that Plaintiff recommended that the court "reform the Note and Deed of Trust to provide for no interest or fees of any kind and further reform the loan to amortize fully over 40 years leaving no balloon payment." Quicken suggested that the court "simply restore the parties to their original positions in this matter and to erase the transaction altogether[,] . . . order[ing] the Plaintiffs to use their recovery in this matter to rid themselves of the Note obligation." The circuit court rejected both courses of action, finding that "Plaintiffs are entitled to some form of meaningful relief other than

unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.

(3) For the purpose of this section, a charge or practice expressly permitted by this chapter is not unconscionable.

16

the status quo" because "Quicken Loans has conclusively engaged in unlawful and egregious conduct in the matter." The circuit court ordered as follows:

> Having rejected both the Plaintiffs' and Quicken Loans' proposed remedies, this [c]ourt adopts a portion of the ruling of the Supreme Court in [*Quicken I*] holding that this [c]ourt has the authority to refuse to enforce the Note and Deed of Trust in the case pursuant to the provisions of West Virginia Code §46A-2-121(1)(a). *Id.* at 166. The Plaintiffs shall have no further legal obligation to repay to Quicken Loans the Note executed by the Plaintiffs, and Quicken Loans shall have no further legal rights under the terms of said Note and Deed of Trust. The Deed of Trust executed by the Plaintiffs shall remain a valid lien on the Plaintiffs' real property. In the event of the sale of Plaintiffs' real property by Plaintiffs, or their heirs, successors or assigns, said sale must be a valid, open market, arms-length transaction with the selling price being at or near fair market value at the time of the sale. At the time of the closing of the sale, Quicken Loans will be entitled to receive all of the net proceeds from the sale up to the principal amount of the loan made to Plaintiffs ($144,800.00). At said closing, and upon receipt of the net proceeds, Quicken Loans shall deliver to Plaintiffs, or their heirs, successors or assigns, a full and final release of the said Deed of Trust and shall discharge the Note as fully paid and satisfied.

(Footnote omitted.)

Quicken asserts that the circuit court failed to comply with this Court's direction in *Quicken I* by effectively cancelling Plaintiff's obligation to repay the loan principal. Quicken claims that the circuit court's "unique 'lien' can be rendered worthless at the whim of Plaintiffs, who need never sell the property and may apparently freely pass it to their 'heirs' or 'assigns' without satisfying the phantom lien." Quicken submits that

17

the court's approach does not comply with this Court's instruction that both parties be returned to the status quo as nearly as is possible.

Plaintiff takes a contrary stance, arguing that the circuit court did not exceed its authority on remand. Specifically, Plaintiff claims that in its appeal, Quicken has seized upon a single phrase from *Quicken I*—"a balancing of the equities requires that the parties be returned to the status quo as nearly as is possible"—for the proposition that Plaintiff "must return the loan principal to Quicken as a condition precedent to any remedy against the loan obligation regardless of the legal theory upon which the Plaintiff[] prevailed." Plaintiff further alleges that the lien created by the court operates in the same manner as any other lien and that upon transfer of the property, Plaintiff will be required to satisfy the lien in the manner described by the court. Finally, Plaintiff argues that the court's remedy balances the Legislature's intent not to enforce unconscionable consumer agreements with the preference given to secured loans.

This issue implicates the law of the case doctrine and the mandate rule, and it requires that the Court determine whether the circuit court complied with the *Quicken I* mandate. Our standard for reviewing a circuit court's interpretation of a mandate is set forth in syllabus point 4 of *Frazier & Oxley*, 214 W. Va. 802, 591 S.E.2d 728: "A circuit court's interpretation of a mandate of this Court and whether the circuit court complied

18

with such mandate are questions of law that are reviewed *de novo*." Thus, we will proceed by applying a *de novo* standard of review.

Upon our *de novo* review, we reject Plaintiff's position and agree with Quicken: The circuit court did not comply with this Court's mandate with regard to the parties' obligations under the loan. We expressly stated in *Quicken I* that "a balancing of the equities requires that the parties be returned to the status quo as nearly as is possible." 230 W. Va. at 328, 737 S.E.2d at 662. The circuit court disregarded that command in fashioning its remedy, stating that "Plaintiffs are entitled to some form of meaningful relief other than the status quo."

The remedy the circuit court fashioned—refusing to enforce the Note while preserving the Deed of Trust as a valid lien on the property—does not act to return the parties as near as possible to the status quo. There are courses of action the property owner (or her heirs or assigns) could take that, pursuant to the circuit court's order, would result in the effective cancellation of at least part of Plaintiff's obligation on the loan.

Under the circuit court's order, Quicken is entitled to the net proceeds, up to the value of the $144,800 loan principal, after the property is sold. Upon finalization of the sale, the circuit court order decrees that Quicken must deliver to the seller a full and final release of the Deed of Trust. The circuit court's order does not provide for

circumstances in which the sale of the property produces less than $144,800. In *Quicken I*, we noted that "true fair market value of the subject property was actually $46,000." *Id.* at 314, 737 S.E.2d at 648. The net proceeds from the sale of the property would be unlikely to total even half of the amount of the loan principal, yet the circuit court's order states that the Deed of Trust will be released upon sale, thus effectively cancelling repayment of the loan principal in the amount of the difference between $144,800 and the net proceeds from the sale. If the property were never sold, the result would be the effective cancellation of the entirety of the loan principal. In sum, the circuit court's order did not return the parties to the status quo as nearly as possible.

As we made clear in *Quicken I*, cancellation of the debt is not a permissible remedy in this case. *See id.* at 325, 737 S.E.2d at 659. Thus, the circuit court's remedy, which effectively cancels at least some of the debt, is in direct contravention of our mandate. The portion of the circuit court's order creating a lien on the property must therefore be reversed.

Again, we emphasize that a balancing of the equities requires that the parties be returned to the status quo as nearly as possible. In providing that direction in *Quicken I*, we cited *Go-Mart, Inc. v. Olson*, 198 W. Va. 559, 482 S.E.2d 176 (1996). In *Go-Mart*, the Court explored whether a seller's lack of capacity to enter into contracts for the sale of certain real property made those contracts voidable. 198 W. Va. at 561, 482

S.E.2d at 178. The Court affirmed the circuit court's determination that the agreements were voidable. *Id.* at 563, 482 S.E.2d at 180. Concluding that a balancing of the equities required that the parties be returned to the status quo as nearly as possible, the Court approved the circuit court's order that the seller return the purchase price paid under the contracts. *Id.* We believe that *Go-Mart* is an appropriate model for balancing the equities in the case *sub judice*.

We do not find error in the circuit court's decision to refuse to enforce the Note and Deed of Trust in this case pursuant to W. Va. Code § 46A-2-121; we expressly stated in *Quicken I* that the court has that authority. 230 W. Va. at 327, 737 S.E.2d at 661. However, the parties must be returned to the status quo as nearly as possible. By refusing to enforce the Note and Deed of Trust while simultaneously requiring that Plaintiff return the principal on the loan by subtracting the amount of the loan principal from the damages awarded to her, we conclude that the parties would be returned, as nearly as possible, to the status quo. Upon remand, the circuit court is directed to order that the loan principal be returned to Quicken by deducting the amount of the loan principal from the Plaintiff's recovery.

**B. Awards**

**1. Restitution**

21

During the post-appellate proceedings, the circuit court awarded an additional $98,800 in compensatory damages to Plaintiff pursuant to W. Va. Code § 31-17-17(c) (2000).[12] The circuit court stated that this amount is "the difference between the original loan amount ($144,800.00) and the legitimate appraised value of the home ($46,000.00)" and that the amount was to be awarded "in lieu of loan cancellation." The Court included the $98,800 in the amount subject to offset by the pretrial settlement amount, and the added award was used to calculate the new punitive damages award following remand.[13]

Quicken argues that the circuit court's award of $98,800 in additional compensatory damages has no legal basis; that the award was improper because compensatory damages, which were not at issue on appeal, were not a proper subject for remand; and that the award was not "compensatory," acting instead as another punitive forfeiture. On the other hand, Plaintiff represents:

> With respect to the cash award of $98,800, Quicken has never appealed the circuit court's general liability findings under W. Va. Code § 31-17-8(m)(8). Quicken did, however, appeal the remedy of loan cancellation. This Court found that the statute does indeed permit loan cancellation for

---

[12] W. Va. Code § 31-17-17(c) states, "Any residential mortgage loan transaction in violation of this article shall be subject to an action, which may be brought in a circuit court having jurisdiction, by the borrower seeking damages, reasonable attorneys fees and costs."

[13] *See infra* Part III.C.

willful violations, but concluded that the circuit court found only a negligent violation of this particular statute and committed error by cancelling the loan. As a lesser but included alternative, the circuit court had the authority on remand to award damages for "negligent" violations under § 31-17-17(c) in lieu of loan cancellation under § 31-17-17(a).[14]

(Footnote added.)

Whether the circuit court erred by awarding the $98,800 in additional compensatory damages on remand requires this Court to analyze the circuit court's interpretation and application of our mandate in *Quicken I*. In accord with syllabus point 4 of *Frazier & Oxley*, we review a circuit court's interpretation of and compliance with a mandate *de novo*. 214 W. Va. 802, 591 S.E.2d 728. As we recognized *supra*, our remand in this case was limited; our mandate expressly delineated the matters to be addressed on remand.

Having carefully reviewed our mandate and *Quicken I*, we agree with Quicken, and we conclude that the circuit court erred by awarding the additional $98,800 in compensatory damages. First, the mandate did not remand the case for a determination of whether Plaintiff was entitled to additional compensatory damages flowing from W.

---

[14] W. Va. Code § 31-17-17(a) (2000) states, "If any primary or subordinate mortgage loan is made in willful violation of the provisions of this article, except as a result of a bona fide error, such loan may be cancelled by a court of competent jurisdiction."

23

Va. Code § 31-17-17(c). We said in *Fraizer & Oxley* that "[u]nder a limited remand, the court on remand is precluded from considering other issues, or new matters, affecting the cause." 214 W. Va. at 809, 591 S.E.2d at 735 (internal quotation omitted). Consideration of W. Va. Code § 31-17-17(c) was outside the scope of the limited remand. Second, as we concluded in *Quicken I* and *supra* Part III.A., with regard to the loan principal and the Note and Deed of Trust, a balancing of the equities requires that the parties be returned to the status quo as nearly as possible. Our mandate did not empower the circuit court to fashion a remedy that did not fully comply with this direction. For these reasons, the circuit court erred by awarding $98,800 to Plaintiff as "some form of meaningful relief other than the status quo." We therefore reduce the compensatory damages award to represent the amount originally awarded by the circuit court's February 25, 2010, order: $17,476.72.

## 2. Attorney Fees and Costs

In its February 17, 2011, order, the circuit court awarded attorney fees totaling $495,956.25 and costs totaling $100,243.25. These fees and costs were not challenged in *Quicken I*. Following remand, the circuit court, in its June 18, 2013, order, awarded an additional $275,975.00 in attorney fees and $3,058.55 in costs for work performed by Plaintiff's counsel on the *Quicken I* appeal and for the proceedings before the circuit court on remand.

Quicken asserts that by awarding fees and costs for work completed with regard to the *Quicken I* appeal, the circuit court ignored this Court's December 24, 2012, mandate explicitly directing that "the parties shall bear their own costs." Quicken further argues that attorney fees and costs should not have been awarded for the appellate proceedings or the proceedings on remand because Plaintiff did not substantially prevail. Quicken also asserts that the award constituted an abuse of discretion because much of the time claimed was in pursuit of punitive damages for common-law fraud and because the hourly rates accepted by the court were unreasonable and excessive.

Plaintiff argues that the mandate restricted the circuit court's ability to award costs and that the mandate did not prohibit the award of attorney fees. Additionally, Plaintiff contends that she substantially prevailed in the litigation as a whole. Plaintiff asserts that the billing records she submitted to the circuit court on remand were reasonable and that the circuit court correctly awarded a fee that covered all of her claims rather than carefully examining hours expended on a claim-by-claim basis.

Awards of attorney fees and costs are reviewed by this Court for an abuse of discretion. We have said:

> Our review of the issue of a trial court's award of attorney's fees is to determine whether the lower court committed error in making the award. In *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16(1959), we explained: "[T]he trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial

> [court's] . . . determination of such matters will not be
> disturbed upon appeal to this Court unless it clearly appears
> that [it] has abused [its] discretion." *Id.* at 478–79, 109 S.E.2d
> at 17, syl. pt. 3, in part.

*Heldreth v. Rahimian*, 219 W. Va. 462, 466, 637 S.E.2d 359, 363 (2006); *see also Chevy Chase Bank v. McCamant*, 204 W. Va. 295, 303, 512 S.E.2d 217, 225 (1998) ("In reviewing the ruling of the circuit court with respect to costs and attorney fees, 'the standard is whether such ruling by the trial court constitutes an abuse of discretion.' *Hopkins v. Yarbrough*, 168 W.Va. 480, 489, 284 S.E.2d 907, 912 (1981).").

In this appeal, the attorney fees and costs awarded in the circuit court's February 17, 2011, order are not at issue; Quicken did not challenge that award on appeal in *Quicken I* and does not attempt to challenge that award now. Our focus is only on the attorney fees and costs awarded for the work completed on appeal to this Court in *Quicken I* and for the post-appellate proceeding. We continue by considering each proceeding individually, reviewing the award of attorney fees for an abuse of discretion.

#### a. First Appellate Proceeding

In her brief to this Court in *Quicken I*, Plaintiff asserted that she "should be awarded attorney fees for defending this appeal." Following our decision in *Quicken I*, our December 24, 2012, mandate stated "that the parties shall each bear their own

costs."[15] The parties dispute whether "costs" include attorney fees. Rule 24 of the West Virginia Rules of Appellate Procedure dictates when costs may be awarded for proceedings before this Court, and the rule directs the Clerk to insert the Court's order regarding costs in the mandate. Rule 24, titled "Costs," states, in full:

> (a) To whom allowed. Except as otherwise provided by law, if an appeal is dismissed, costs shall be taxed against the petitioner unless otherwise agreed by the parties or ordered by the Court; if a judgment is affirmed, costs shall be taxed against the petitioner unless otherwise ordered; if a judgment is reversed, costs shall be taxed against the respondent unless otherwise ordered; if a judgment is affirmed or reversed in part, or is vacated, costs shall be allowed only as ordered by the Court.
>
> (b) Costs for or against the state. In cases involving the State of West Virginia or an agency or officer thereof, if an award of costs against the State is authorized by law, costs shall be awarded in accordance with the provisions of subdivision (a); otherwise, costs shall not be awarded for or against the State.
>
> (c) Taxable costs. Costs of assembling and filing the appendix are taxable as costs in the discretion of the Court and may be divided among the parties to the appeal. Other taxable costs include costs for the preparation and handling of the designated record. Attorney's fees and costs are not taxable unless specifically provided by law.
>
> (d) Costs in disciplinary actions. If the Court directs that costs be paid in connection with a lawyer or judicial disciplinary action, disciplinary counsel shall, within twenty days of entry of the applicable order, memorandum decision, or opinion, provide the Court and the respondent in the

---

[15] W. Va. Code § 59-2-11 (1923) (in part) requires that "in every case in an appellate court costs shall be recovered in such court by the party substantially prevailing." In that we did not award costs to either party, neither party substantially prevailed on appeal.

disciplinary action with a certified statement of the costs as specified by the Court.

(e) Clerk to insert costs in mandate. The Clerk shall prepare and certify an itemized statement of costs taxed in the Supreme Court for insertion in the mandate. If the mandate has been issued before final determination of costs, the statement, or any amendment thereof, may be added to such order at any time upon request of the Clerk.

(f) Costs on appeal taxable in the circuit courts. Costs incurred in the preparation and transmission of the record, the cost of the reporter's transcript, if necessary for the determination of the appeal, and the premiums paid for cost of appeal bonds or other bonds to preserve rights pending appeal, shall be taxed in the circuit court as costs of the appeal in favor of the party entitled to costs under this rule.

According to Plaintiff, Rule 24 "makes it abundantly clear that the 'costs' include only the costs of preparing, assembling and filing the appendix . . . and *do not* include attorney fees." We disagree. In our reading of Rule 24, although we can find no language that specifically excludes attorney fees from being considered costs, we also find no language specifically stating that attorney fees may be considered costs. We therefore look to our own jurisprudence.

This is not the first instance in which we have spoken of "costs" in terms of Rule 24. In *Hechler v. Casey*, 175 W. Va. 434, 333 S.E.2d 799 (1985), we examined whether attorney fees could be awarded under Rule 24 for work done by the Office of the Attorney General in representing the Secretary of State in a prohibition proceeding before

28

the Court. We recognized that Rule 24(b)[16] "expressly precludes an award of costs for the benefit of the State or an agency or officer thereof in a case before this Court." *Hechler*, 175 W. Va. at 449, 333 S.E.2d at 814–15. The Court determined that a statute authorizing a prevailing party to recover attorney fees, if that party is the State or an agency or officer thereof, is not enforceable because it conflicts with Rule 24. *Id.*, 333 S.E.2d at 815; *see also* W. Va. Code § 51-1-4a(d) (1945) (in part) ("The inherent rule-making power of the Supreme Court of Appeals is hereby declared. When and as the rules of the court herein authorized shall be prescribed, adopted, and promulgated, all laws and parts of laws that conflict therewith shall be and become of no further force or effect to the extent of such conflict."). In so finding, the Court implicitly acknowledged that attorney fees may be costs under Rule 24.

We then went on in *Hechler* to state that, except when the losing party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons," *Id.* at 450, 333 S.E.2d at 815, "no party may recover attorney fees beyond the statutory amount as part of the 'costs' of a proceeding." *Id.* at 449, 333 S.E.2d at 815; *see Shafer v. Kings Tire Serv., Inc.*, 215 W. Va. 169, 173, 597 S.E.2d 302, 306 (2004) ("While the term 'costs' usually does not include attorney's fees, *Nelson v. West Virginia Public Employees Insurance*

---

[16] When *Hechler* was decided, the language that currently appears in Rule 24 was embodied in Rule 23. The rules were later amended, and Rule 23 was renumbered as Rule 24.

*Board*, 171 W.Va. 445, 451, 300 S.E.2d 86, 92 (1982), if an applicable statute defines costs to include attorney's fees, then attorney's fees may be recovered as costs. *See generally* 20 Am.Jur.2d *Costs* § 57 (1995)."). We now hold that "costs" within the meaning of Rule 24 of the West Virginia Rules of Appellate Procedure include attorney fees when "costs" are defined as including attorney fees in any statute applicable to the case that allows for the recovery of the costs of a proceeding.

With regard to attorney fees, we have held that "'[a]s a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement.' Syl. Pt. 2, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986)." Syl. pt. 2, *State ex rel. Hicks v. Bailey*, 227 W. Va. 448, 711 S.E.2d 270 (2011). In the instant case, W. Va. Code § 46A-5-104 (1994) provides a statutory basis for the recovery of attorney fees. W. Va. Code § 46A-5-104 states, with emphasis added:

> In any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, *the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer*. On a finding by the court that a claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice was brought in bad faith and for the purposes of harassment, the court may award to the defendant reasonable attorney fees.

This statute defines "costs" as including "attorney fees." In other words, in cases brought pursuant to the WVCCPA for illegal, fraudulent, or unconscionable conduct, or any

prohibited debt collection practice, under W. Va. Code § 46A-5-104, attorney fees are a type of cost. Because "costs" include attorney fees under W. Va. Code § 46A-5-104, attorney fees are recoverable as costs under Rule 24. Therefore, the term "costs" in our mandate in *Quicken I* encompasses attorney fees.

Rule 24 gives this Court the authority to tax costs, and the clear language of Rule 24(c) describes costs that are taxable by this Court. Rule 24(c) specifically mentions attorney fees and costs, stating that they are taxable only when provided by law. The rule does not speak to a trial court's authority to award attorney fees for appellate proceedings; however, based on the language of the rule and cases from other jurisdictions, we conclude that any such authority exists only at the direction of this Court. *See, e.g.*, *Deep Water Brewing, LLC v. Fairway Res., Ltd.*, 282 P.3d 146, 150 (Wash. Ct. App. 2012) ("In light of the fact that trial courts have discretion to set the amount of attorney fees, we conclude . . . that the trial courts retain that discretion on remand unless expressly limited by the appellate courts or the exercise of discretion would be inconsistent with the ruling on appeal." (Footnote omitted.)); *Avemco Ins. Co. v. Tobin*, 886 So. 2d 1034, 1036 (Fla. Dist. Ct. App. 2004) ("With respect to the award of attorney's fees on appeal, in determining an award the trial court is bound by the terms of the order of our court. It is simply carrying out the intent of the appellate court."); *Kadish v. Ariz. State Land Dep't*, 868 P.2d 335, 341 (Ariz. Ct. App. 1993) ("The [appellate] court rendered no decision regarding fees that could have constituted the law of the case

31

in further proceedings. Thus, upon remand the trial court was free to entertain appellants' attorney's fees application and was not barred from awarding such fees."); *MST Farms v. C.G. 1464*, 251 Cal. Rptr. 72, 74 (Cal. Ct. App. 1988) (finding that the trial court has jurisdiction to award attorney fees as costs when a statute provides that attorney fees are recoverable as costs and the appellate court directs that the parties be awarded costs).

While this Court holds the authority under Rule 24 to order an award of attorney fees as costs for appellate proceedings and the necessarily corresponding authority to set that award, we recognize that trial courts, as courts of record, may be best situated to determine the reasonable amount to award. *See Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. Ct. App. 2002) ("[A]lthough appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested."); *McManama v. Lukhard*, 616 F.2d 727, 730 (4th Cir. 1980) ("We remand the case, however, for an assessment of additional attorneys' fees against the appealing defendant to compensate the plaintiffs for the expense of their successful defense of his appeal."); *Ind. Hosp. Licensing Council v. Women's Pavilion of S. Bend, Inc.*, 424 N.E.2d 461, 463 (Ind. Ct. App. 1981) ("[W]e find appellate courts routinely . . . either order an award for a specified amount or remand the cause after affirmance solely for a determination of the amount of appellate fees."). In the past, when this Court has found

that attorney fees and costs for appellate proceedings should be awarded, the Court has remanded cases to allow a trial court to determine the proper amount of attorney fees to be awarded. *See, e.g.*, *Michael C. v. Teressa D.*, No. 13-1077, 2014 WL 4930191, at *6 (W. Va. Oct. 2, 2014) ("Under these circumstances, there is authority in equity to award the paternal grandparents their attorney's fees and costs. Thus, the issue of reasonableness of any attorney's fees is remanded to the circuit court for its determination."); *Fauble v. Nationwide Mut. Fire Ins. Co.*, 222 W. Va. 365, 368, 664 S.E.2d 706, 709 (2008) ("Therefore, the December 5, 2006, order of the Circuit Court is reversed, and this matter is remanded to that Court for a determination of the amount of reasonable attorney fees to which the Faubles are entitled upon their petition against Nationwide, including an amount of reasonable attorney fees and costs incurred in appealing the December 5, 2006, order to this Court."); *Martinka Coal Co. v. W. Va. Div. of Envtl. Prot.*, 214 W. Va. 467, 471, 590 S.E.2d 660, 664 (2003) ("Accordingly, the September 27, 2002, final order of the Circuit Court of Marion County is reversed. The case is remanded for determination of eligibility and, as appropriate, award of reasonable attorneys' fees, including attorneys' fees attendant to this appeal.").

Based on the foregoing, we now hold that pursuant to Rule 24 of the West Virginia Rules of Appellate Procedure, attorney fees and costs may be awarded for appellate proceedings by either this Court or by the trial court following the direction of this Court. Although this Court has the authority to set the amount of an attorney fee

award, this Court may, in its discretion, instead direct the trial court to determine the amount of the appropriate attorney fee award on remand.

The mandate required the parties to "bear their own costs." Therefore, the circuit court abused its discretion by awarding litigation costs for the appellate proceeding.[17] Additionally, because attorney fees are costs in this case, an award of attorney fees for work conducted by Plaintiff's counsel on appeal violates the mandate. *O'Loughlin v. O'Loughlin*, 479 S.E.2d 98, 98, 100 (Va. Ct. App. 1996) (holding that "absent an order from the Court of Appeals specifically remanding the issue of attorney's fees incurred on appeal," a trial court does not have jurisdiction to award such fees); *see Powell v. Paine*, 226 W. Va. 125, 129, 697 S.E.2d 161, 165 (2010) (concluding that the circuit court acted within the scope of the mandate by refusing to award attorney fees and costs on a limited remand where the plaintiff had not requested attorney fees and costs in

---

[17] The circuit court's order does not delineate what amount of its award of costs is attributable to the appeal and which is attributable to the remand proceeding. However, the appendix record provided to this Court contains the itemized list of costs, which was furnished to the circuit court by Plaintiff's counsel on remand. It appears that the circuit court relied on this itemized list of costs in setting the $3,058.55 award. The list includes costs accrued from April 11, 2011, through May 23, 2013. A portion of the costs were necessarily incurred in association with the *Quicken I* appeal. For the reasons discussed *infra* Part III.B.2.b., it is unnecessary to remand the case for a determination of the exact amount of the award attributable to the appeal.

the underlying proceeding).[18] Because this Court spoke to attorney fees and costs for the appellate proceeding in its mandate and denied the same, the circuit court's award of attorney fees for work associated with the appellate proceeding, despite the mandate, constituted an abuse of discretion. We conclude that the circuit court's award of attorney fees and costs to Plaintiff associated with the appeal to this Court in *Quicken I* must be reversed.

### b. Post-Appellate Proceeding

As noted above, W. Va. Code § 46A-5-104 allows a consumer to recover attorney fees in any action brought for illegal, fraudulent, or unconscionable conduct or any prohibited debt collection practice. We have said that whether attorney fees and costs should be awarded for proceedings before the circuit court is within the discretion of the circuit court. *State ex rel. Ocwen Loan Servicing, LLC v. Webster*, 232 W. Va. 341, 362, 752 S.E.2d 372, 393 (2013) ("[T]he WVCCPA merely grants the court discretion to award attorney's fees, it does not mandate such an award. Furthermore, the court's discretion in this regard extends to granting attorney's fees to either a plaintiff or a defendant under the proper circumstances."); *see also Nelson v. W. Va. Pub. Emps. Ins.*

---

[18] The circuit court's order does not delineate what amount of its award of attorney fees is attributable to the appellate proceedings; however, timesheets contained within the appendix record indicate that the total attorney fees award in the June 18, 2013, order does, to some degree, include attorney fees for work completed on the appellate proceedings. For the reasons discussed *infra* Part III.B.2.b., it is unnecessary to remand the case for a determination of the exact amount of the award attributable to the appeal.

*Bd.*, 171 W. Va. 445, 450, 300 S.E.2d 86, 91 (1982) ("As a general rule awards of costs and attorney fees are not recoverable in the absence of a provision for their allowance in a statute or court rule."). When this Court reviews an award of attorney fees and costs, the award is reviewed for an abuse of discretion. *Heldreth*, 219 W. Va. at 466, 637 S.E.2d at 363; *see also Chevy Chase Bank*, 204 W. Va. at 303, 512 S.E.2d at 225.

Quicken contends that the circuit court erred by awarding to Plaintiff attorney fees and costs for the proceeding on remand because "[a]ll of the litigation on remand concerned issues on which Quicken was successful on appeal: punitive damages, cancellation of the loan, and offset." (Emphasis omitted.) Quicken asserts that by awarding this set of attorney fees and costs to Plaintiff, the circuit court has effectively punished it for taking a successful appeal. Plaintiff disagrees with Quicken, arguing that the measure of success "is measured from the standpoint of the litigation as a whole" and not by the Plaintiff's individual claims. Thus, according to Plaintiff, Quicken has not been punished by taking an appeal.

Our Court has never spoken to whether attorney fees are awardable for proceedings following remand; however, other jurisdictions have addressed the issue. In those jurisdictions, the short answer to the question of whether attorney fees and costs are awardable following remand is: "It depends."

In *American Rural Cellular, Inc. v. Systems Communication Corp.*, 939

P.2d 185 (Utah Ct. App. 1997), an issue on appeal before the Court of Appeals of Utah

was whether the trial court had properly awarded attorney fees for the post-appellate

proceeding. In that case, the plaintiff filed an action to terminate a contract between the

parties and to void mechanics' liens filed by the defendant. *American Rural Cellular*, 939

P.2d at 188. The defendant counterclaimed, seeking foreclosure on the mechanics' liens

and damages for breach of contract. *Id.* The trial court held, *inter alia*, that the

defendant's counterclaim was not barred by statute. *Id.* The plaintiff appealed to the Utah

Court of Appeals which reversed the trial court for failing "to make adequate findings to

support its decision that [the defendant] was not barred from maintaining its action." *Id.*

at 188–89. The case was remanded for detailed findings on the issue. *Id.* at 89.


On remand, the trial court again ruled for the defendant. *Id.* The trial court

awarded attorney fees and costs for, among other things, the proceeding following

remand. *Id.* Again, the plaintiff appealed to the Utah Court of Appeals. *Id.* With regard to

the issue of attorney fees and costs, the Utah Court of Appeals observed that Utah Code

Ann. § 38-1-18 (1996) permits the recovery of a reasonable attorney fee by a successful

party "[i]n any action brought to enforce any lien." *Id.* at 193. The Utah Court of Appeals

determined that the defendant's counterclaim to foreclose its mechanics' liens constituted

"an action brought to enforce any lien" under the statute. *Id.* Accordingly, the Utah Court

of Appeals concluded that the defendant, as the successful party on the counterclaim to

foreclose its mechanics' liens, was entitled to recover attorney fees on remand "insofar as the attorney fees were incurred in enforcing or defending the mechanics' lien claims." *Id.* However, the Utah Court of Appeals determined that the defendant was "not entitled under section 38-1-18 to attorney fees incurred in pursuing its nonlien claims which were 'completely separate' from the lien claims." *Id.*[19]

Cases on point, like *American Rural Cellular*, establish that whether attorney fees are awardable for proceedings on remand depends on (1) the existence of authority permitting recovery of those fees and (2) the success—as required by the controlling statute—of the party seeking fees on claims for which attorney fees are permitted. Like the statute authorizing the recovery of attorney fees for mechanics' lien claims in *American Rural Cellular*, the controlling statute in the present case, W. Va. Code § 46A-5-104, allows a consumer to recover reasonable attorney fees and costs for claims brought under the WVCCPA. On remand, the claims before the circuit court— Plaintiff's claims involving punitive damages, her obligations under the loan, and offset—were clear and distinct.

---

[19] *See also Bowen & Smoot v. Plumlee*, 417 S.E.2d 855, 856 (S.C. 1992) ("[I]t is within the trial judge's authority to determine the appropriate amount and award attorney's fees for services rendered as a result of this case being remanded.").

The issue of punitive damages does not relate to claims brought pursuant the WVCCPA. In this case, punitive damages are only available to Plaintiff because of her success on her common law fraud claim.[20] As was the case below, there is no authority for the award of attorney fees and costs for the punitive damages claim. Thus, the circuit court abused its discretion by awarding attorney fees and costs for the post-appellate proceeding for work completed by Plaintiff's counsel on the issue of punitive damages.

The determination of Plaintiff's obligations under the loan is connected to the WVCCPA in that Plaintiff argued that the WVCCPA provided the basis for cancellation of the loan. The Court determined in *Quicken I* that the WVCCPA does not allow cancellation of the loan in this case. On remand, Plaintiff did not reassert a claim for cancellation of the loan. Instead, it requested a new, alternate remedy: an award of damages pursuant to W. Va. Code § 31-17-17(c).[21] First, because Plaintiff did not re-argue on remand that she was entitled to cancellation of the loan—in other words, her

---

[20] While WVCCPA does not provide a statutory basis for an award of punitive damages, punitive damages may be awarded pursuant to a common law fraud claim. *See* syl. pt. 4, *Mayer v. Frobe*, 40 W. Va. 246, 22 S.E. 58 (1895) ("In actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous.").

[21] W. Va. Code § 31-17-17(c) is quoted *supra* note 12.

counsel did not complete any work on that issue—Plaintiff is not entitled to attorney fees and costs attendant to the circuit court's cancellation of the loan. Second, while attorney fees and costs are authorized for actions brought pursuant to W. Va. Code § 31-17-17(c), Plaintiff's claim for damages, attorney fees, and costs pursuant to this statutory section were outside of the Court's limited remand. Thus, from the start, the W. Va. Code § 31-17-17(c) claim could not be sustained. Although W. Va. Code § 31-17-17(c) does not dictate any level of success necessary for the consumer to recover attorney fees, we have held that "[w]here attorney's fees are sought . . . , the test of what should be considered a reasonable fee . . . is generally based on broader factors such as: . . . (8) . . . the results obtained." Syl. pt. 4, in part, *Aetna Cas. & Sur. Co.*, 176 W. Va. 190, 342 S.E.2d 156 (1986); *see also Heldreth*, 219 W. Va. at 467, 637 S.E.2d at 364 ("The calculation of attorney's fees in a human rights action requires, as this Court has previously recognized, the exclusion of hours spent on unsuccessful claims."); syl. pt. 5, *State ex rel. W. Va. Highlands Conservancy, Inc. v. W. Va. Div. of Envtl. Prot.*, 193 W. Va. 650, 458 S.E.2d 88 (1995) ("Apportionment of attorney's fees is appropriate where some of the claims and efforts of the claimant were unsuccessful. Where part of the attorney's fees sought was expended on discrete efforts that achieved no appreciable advantage in the litigation, or where the claim for attorney's fees rests partly on a result to which the claimant made no significant contribution, a court may consider these circumstances and apportion the attorney's fees accordingly."); *Daily Gazette Co. v. W. Va. Dev. Office*, 206 W. Va. 51, 64, 521 S.E.2d 543, 556 (1999) (quoting syllabus point 5 of *Highlands Conservancy*).

40

Where counsel has devoted time and resources to an unwinnable claim, such as a claim outside the scope of this Court's limited remand, it is unreasonable and inequitable to award counsel attorney fees and costs for that claim. Therefore, the circuit court abused its discretion by awarding attorney fees and costs for work completed by Plaintiff's counsel on the W. Va. Code § 31-17-17(c) claim.

Finally, we observe that the issue of offset involves Plaintiff's defense of the award of compensatory damages she received pursuant to the WVCCPA. On remand, Plaintiff argued that only the compensatory damages award, not the award of compensatory damages *and* attorney fees and costs, should be subject to offset by the pretrial settlement amount. The circuit court agreed with Plaintiff. For the reasons given *infra* in Part III.C. of this Opinion, we disagree.

In *American Rural Cellular*, the Utah Court of Appeals awarded attorney fees for the post-appellate proceeding because its affirmation of the trial court's rulings on appeal made the defendant "the successful party in its counterclaim." 939 P.2d at 193. Conversely, here, Plaintiff has unsuccessfully defended her position pertaining to offset. Like with W. Va. Code § 31-17-17(c), W. Va. Code § 46A-5-104 does not describe the level of success necessary for the consumer to recover attorney fees and costs, but as above with regard to the issue of cancellation of the loan, we find syllabus point 4 of *Aetna Casualty & Surety Co.*, 176 W. Va. 190, 342 S.E.2d 156 (stating that success is a

41

factor used to determine the reasonableness of an attorney fees award), instructive. Where there has been no success, an award of attorney fees for work completed on a losing claim would be unreasonable and inequitable. Therefore, because Plaintiff is the unsuccessful party regarding offset, she is not entitled to a post-appellate award of attorney fees and costs associated with that claim, and the circuit court abused its discretion by awarding the same.

Having determined that the circuit court improperly awarded attorney fees and costs for the proceedings on remand because those fees and costs were either unauthorized by statute or because Plaintiff was unsuccessful on her claims, we need not address Quicken's additional arguments challenging the propriety of the award of attorney fees and costs for the post-appellate proceeding.[22]

---

[22] Quicken submitted the following assignment of error on appeal to this Court:

> The Circuit Court's award of attorneys' fees was an abuse of discretion because it accepted without question or scrutiny time records that were vague, reconstructed, and in some instances inscrutable; much of the time claimed was in pursuit of punitive damages for common-law fraud, rather than a claim for which statutory fee-shifting is permitted; and it approved, without explanation, hourly rates considerably in excess of those previously found reasonable by Judge Recht.

Because we have determined that no attorney fees should have been awarded for the post-appellate proceeding, it is unnecessary to examine the basis of the circuit court's award of attorney fees.

(continued . . .)

### c. Current Appellate Proceeding

Neither party has requested an award of attorney fees and costs for these appellate proceedings. We conclude that this case does not warrant such an award. The parties shall each bear their own attorney fees and costs for these appellate proceedings.

### 3. Punitive damages

As established above, punitive damages are available to Plaintiff in this case because Plaintiff prevailed on her common law fraud claim. In the circuit court's February 17, 2011, order, which was appealed in *Quicken I*, the circuit court awarded $2,168,868 in punitive damages to Plaintiff. Following *Quicken I*, the circuit court on remand revised the award of punitive damages, increasing the amount by $1,331,132, for a total award of $3,500,000 in punitive damages.

In this appeal, Quicken challenges the award of punitive damages, arguing that the award violates Quicken's due process rights, that it constitutes a punishment for

---

Additionally, as with the attorney fees and costs awarded for the appellate proceedings, the circuit court did not distinguish what portion of its award was allotted to the post-appellate proceeding. However, because we have determined that Plaintiff is not entitled to any of the attorney fees and costs awarded for either proceeding, it is unnecessary to remand this case for a clarification as to which fees were attributable to which proceeding; we reverse all attorney fees and costs awarded in the circuit court's June 18, 2013, order that are above and beyond the $596,199.89 awarded prior to the first appeal.

taking a successful appeal, that the circuit court wrongfully relied on lawful conduct to justify the award, that the circuit court erred by considering Quicken's wealth in setting the award, and that the facts relied upon by the circuit court in determining reprehensibility were connected to conduct dissimilar from that upon which liability for fraud was premised.

### a. Increase of the Punitive Damages Award on Appeal

Quicken assigns as error the circuit court's post-appellate decision to increase the punitive damages award from $2,168,868.75 to $3,500,000. Quicken asserts that the increase is unconstitutional because it effectively penalizes Quicken for taking a successful appeal. Plaintiff argues that Quicken assented to the increase during the post-appellate proceeding when it agreed with the circuit court's position that the court was not bound by Judge Recht's prior ruling.

At the outset, upon our examination of the June 18, 2013, order giving rise to this appeal, we find that the circuit court justified the increase in the punitive damages award on increases to the compensatory damages award and attorney fees and costs award post-appeal. In Part III.B.1. and Part III.B.2. of this opinion, we determined that the increases to compensatory damages and attorney fees and costs were in error. Thus, exclusion of the supplementary amounts of compensatory damages and attorney fees and costs from the original awards and application of the multiplier used by the circuit court

44

in both trial court proceedings—3.53—results in the original $2,168,868.75 punitive damages award.[23]

In so finding, we do not wish to imply that the circuit court's decision to increase the punitive damages on remand would have been justified if we had not eliminated the increased compensatory damages and/or attorney fees and costs from the equation. Because Plaintiff did not challenge the $2,168,868.75 award as insufficient during the first appeal, the upper limit of the punitive damages award was set at that amount in *Quicken I*. Despite the assertions of Plaintiff, and despite Quicken's statements to the circuit court on remand that the court was not bound by the original $2,168,868.75 award, the circuit court's power to adjust the award upward was constrained by our mandate in *Quicken I. See Frazier v. Oxley*, 214 W. Va. at 808, 591 S.E.2d at 734 ("The law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case . . . ." (Internal quotation omitted.)). Had the circuit court, upon completion of the proper review of the punitive damages award on

---

[23] Quicken argues in its brief that the circuit court erred by using the $98,800 increase in compensatory damages to justify increasing the punitive damages award because the $98,800 was awarded for negligent conduct, which is conduct that cannot justify punitive damages. To the extent that we have determined that the $98,800 increase in compensatory damages was improper as outside of our mandate, *see supra* Part III.B.1., the increase cannot provide justification for increasing the punitive damages award, whether or not the $98,800 award was based on negligent conduct.

remand, concluded that the award was, as Quicken alleged, excessive, then the circuit court would have had the authority to grant a remittitur.[24]

Because the circuit court decided Plaintiff was entitled to punitive damages in excess of those originally awarded, we must reduce the punitive damages award to a maximum of $2,168,868.75 so that it complies with the law of the case. This amount, however, must be evaluated to determine whether it is excessive.

### b. Analyzing the Excessiveness of a Punitive Damages Award

Quicken contends that the amount of punitive damages awarded in this case is excessive and exceeds the constitutional limits established in *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996), and *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003). More specifically, *BMW* and *State Farm* set forth three guideposts for assessing the constitutionality of punitive damages awards, and Quicken argues that the circuit court either incorrectly applied or failed to apply the guideposts in setting the punitive damages award in this case. Quicken also asserts that the circuit court improperly applied *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991).

---

[24] *See* syl. pt. 9, *Perrine v. E.I. Du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010) ("When a court grants a remittitur, the plaintiff must be given the option of either accepting the reduction in the verdict or electing a new trial.").

46

In *Garnes*, this Court held that "[p]unitive damages must bear a reasonable relationship to the potential of harm caused by the defendant's actions." Syl. pt. 1, in part, *Garnes*, 186 W. Va. 656, 413 S.E.2d 897. Further, we held:

> Under our system for an award and review of punitive damages awards, there must be: (1) a reasonable constraint on jury discretion; (2) a meaningful and adequate review by the trial court using well-established principles; and (3) a meaningful and adequate appellate review, which may occur when an application is made for an appeal.

Syl. pt. 2, *id.*

First, with regard to constraining jury discretion, the Court set forth detailed instructions that must be provided to a jury considering punitive damages:

> When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows:
>
> (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.
>
> (2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant

47

engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

(3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant.

(4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages.

(5) The financial position of the defendant is relevant.

Syl. pt. 3, *id.*

Second, *Garnes* provides additional factors trial courts must consider when reviewing a jury's punitive damages award:

When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors:

(1) The costs of the litigation;

(2) Any criminal sanctions imposed on the defendant for his conduct;

(3) Any other civil actions against the same defendant, based on the same conduct; and

(4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff.

Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the

48

sound discretion of the trial court, any of the above factors may also be presented to the jury.

Syl. pt. 4, *id.* We clarified that "[t]he extra factors that the judge must consider . . . are important in determining the constitutionality of any particular punitive damages award." *Id.* at 669, 413 S.E.2d at 910. If, when reviewing a jury's award of punitive damages, the trial court determines that the award should be changed, the "trial court should thoroughly set out the reasons for changing (or not changing) the award." *Id.* Recently, we created a new syllabus point incorporating syllabus points 3 and 4 of *Garnes* so as to simplify the review of punitive damages awards:

> When a trial or appellate court reviews an award of punitive damages for excessiveness under Syllabus points 3 and 4 of *Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 413 S.E.2d 897 (1991), the court should first determine whether the amount of the punitive damages award is justified by aggravating evidence including, but not limited to: (1) the reprehensibility of the defendant's conduct; (2) whether the defendant profited from the wrongful conduct; (3) the financial position of the defendant; (4) the appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed; and (5) the cost of litigation to the plaintiff. The court should then consider whether a reduction in the amount of the punitive damages should be permitted due to mitigating evidence including, but not limited to: (1) whether the punitive damages bear a reasonable relationship to the harm that is likely to occur and/or has occurred as a result of the defendant's conduct; (2) whether punitive damages bear a reasonable relationship to compensatory damages; (3) the cost of litigation to the defendant; (4) any criminal sanctions imposed on the defendant for his conduct; (5) any other civil actions against the same defendant based upon the same conduct; (6) relevant information that was not available to the jury because it was unduly prejudicial to the defendant; and (7) additional relevant evidence.

49

Syl. pt. 7, *Perrine*, 225 W. Va. 482, 694 S.E.2d 815.

Third, to ensure a meaningful and adequate appellate review, *Garnes* set forth the means by which this Court will review an award of punitive damages:

> Upon petition, this Court will review all punitive damages awards. In our review of the petition, we will consider the same factors that we require the jury and trial judge to consider, and all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this case with particularity, summarizing the evidence presented to the jury on the subject or to the trial court at the post-judgment review state. Assignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law.

Syl. pt. 5, *id.*

Our standard of review of petitions challenging punitive damages awards is *de novo*. *See* syl. pt. 16, *Peters v. Rivers Edge Mining, Inc.*, 224 W. Va. 160, 680 S.E.2d 791 (2009) ("When reviewing an award of punitive damages in accordance with Syllabus point 5 of [*Garnes*], and Syllabus point 5 of *Alkire v. First National Bank of Parsons,* 197 W.Va. 122, 475 S.E.2d 122 (1996), this Court will review *de novo* the jury's award of punitive damages and the circuit court's ruling approving, rejecting, or reducing such award."); *Boyd*, 216 W. Va. at 559–60, 608 S.E.2d at 176–77 ("[O]ur review of this issue is *de novo. See Phillip Leon M. v. Greenbrier Cty. Bd. of Educ.,* 199 W.Va. 400, 404, 484 S.E.2d 909, 913 (1996), *modified on other grounds by Cathe A. v. Doddridge County Bd.*

*Of Educ.,* 200 W.Va. 521, 490 S.E.2d 340 (1997) (stating that '[b]ecause interpretations of the West Virginia Constitution, along with interpretations of statutes and rules, are primarily questions of law, we apply a *de novo* review'); *cf. Cooper Industries, Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, 436, 121 S.Ct. 1678, 1685-86, 149 L.Ed.2d 674 (2001) (providing that 'courts of appeals should apply a *de novo* standard of review when passing on district courts' determinations of the constitutionality of punitive damages awards' (footnote omitted)).").

### c. Whether the Punitive Damages Award Was Excessive

Quicken asserts that the circuit court's award of punitive damages is excessive and that the award violates its right to substantive due process.[25] With regard to the review of punitive damages awards, we have held:

> When this Court, or a trial court, reviews an award of punitive damages, the court must first evaluate whether the conduct of the defendant toward the plaintiff entitled the plaintiff to a punitive damage award under *Mayer v. Frobe,* 40 W.Va. 246, 22 S.E. 58 (1895), and its progeny. If a punitive damage award was justified, the court must then examine the amount of the award pursuant to the aggravating and mitigating criteria set out in [*Garnes*] and the compensatory/punitive damage ratio established in *TXO Production Corp. v. Alliance Resources Corp.* [(*TXO I*)]*,* 187

---

[25] Quicken does not argue that it was denied procedural due process. *See Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 432 (1994) ("[D]enial of judicial review of the size of punitive damages awards violates the Due Process Clause of the Fourteenth Amendment."). Our discussion is therefore limited to whether Quicken was denied substantive due process.

W. Va. 457, 419 S.E.2d 870 (1992)[, *aff'd* 509 U.S. 443 (1993)].

Syl. pt. 6, *Perrine*, 225 W. Va. 482, 694 S.E.2d 815. In the present case, Quicken does not argue that Plaintiff is not entitled to a punitive damages award. Thus, in this appeal, Plaintiff's entitlement to punitive damages is assumed and we need only address whether the punitive damages award is excessive.

The review of a punitive damages award for excessiveness can have two dimensions. The award may be reviewed to determine whether it complies with minimum federal substantive due process requirements, and the award may be reviewed to determine whether it exceeds state law limits on excessiveness. Quicken failed in its brief and reply brief in the *first* appeal to raise any issue pertaining to *BMW* and *State Farm*. Therefore, we determine that Quicken has waived that federal substantive due process challenge in this *second* appeal. We proceed by addressing only whether the punitive damages award is excessive under our state law.[26]

---

[26] The author of this opinion and Justice Loughry, separate from the majority, upon independent review of the appendix record and the briefs submitted by the parties, do not believe that Quicken has waived its federal substantive due process argument. However, even had Quicken failed to argue that it was denied federal substantive due process in the first appeal, this Court is not barred from considering whether there is merit to the argument in this second appeal. While syllabus point 6 of *Addair* is the general rule regarding how this Court treats waiver, it is "not jurisdictional in the sense that [it] encroach[es] in any fashion upon our inherent authority to consider and decide pertinent matters that otherwise may be ignored as abandoned or waived. Thus, we possess the discretion under appropriate circumstances to disregard the parties'

(continued . . .)

Syllabus points 3 and 4 of *Garnes*, 186 W. Va. 656, 413 S.E.2d 897; syllabus point 7 of *Perrine*, 225 W. Va. 482, 694 S.E.2d 815; and syllabus point 15 of *TXO I*, 187 W. Va. 457, 419 S.E.2d 870, encompass all of the factors necessary to determine whether a punitive damages award requires reduction.[27] However, we need not consider every factor in this appeal. As we held in syllabus point 5 in *Garnes*, 186 W. Va. 656, 413 S.E.2d 897, factors not specifically addressed by the petitioner on appeal are waived. Quicken has limited its argument on appeal regarding the excessiveness of the award to only the following factors: the reprehensibility of Quicken's conduct, the financial position of Quicken, the appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed, whether the punitive

inattention to a particular argument or issue." *United States v. Holness*, 706 F.3d 579, 592 (4th Cir. 2013). Indeed, syllabus point 6 of *Addair*, 158 W. Va. 306, 284 S.E.2d 374, by its very language, is discretionary. Because it is within our jurisdiction to consider whether Quicken's federal substantive due process rights have been violated, and because the author of this opinion and Justice Loughry perceive a tremendous need to examine the interplay of our state punitive damages law and federal punitive damages law, the author of this opinion and Justice Loughry would have discussed and evaluated the issue. Since 1991, our decision in *Garnes* has served as West Virginia's primary authority on the awarding of punitive damages in West Virginia. However, as was implicit in our recent consideration in *Perrine*, the *Garnes* factoring analysis is not immune from the need to evolve with time and to be modified consistent not only with our state's jurisprudence, but also with the requirements of federal due process as set forth in the jurisprudence of the United States Supreme Court, and specifically in *State Farm* and *BMW*.

[27] In syllabus point 8 of *Perrine*, 225 W. Va. 482, 694 S.E.2d 815, the Court held, "A punitive damages award that is not constitutionally excessive under [*TXO I*] may nevertheless be reduced by a reviewing court when, in the discretion of the court, a reduction is warranted by mitigating evidence."

damages bear a reasonable relationship to the harm, and whether punitive damages bear a reasonable relationship to compensatory damages. Thus, we find that Quicken has waived any challenge to the circuit court's consideration of the factors listed in syllabus point 7 of *Perrine*, 225 W. Va. 482, 694 S.E.2d 815, aside from those listed above. We continue our analysis by examining the factors specifically addressed by Quicken and determining whether they warrant reduction of the punitive damages award.

### i. Aggravating Factors

**aa. Reprehensibility of Quicken's Conduct.** The first factor we must consider in judging the excessiveness of the punitive damages award is the reprehensibility of Quicken's conduct. In syllabus point 3 of *Garnes*, 186 W. Va. 656, 413 S.E.2d 897, we said that when considering a defendant's reprehensibility, a jury should be instructed, when it would not be unfairly prejudicial to do so, to consider

> how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him.

With regard to reprehensibility, the circuit court found in its June 18, 2013, order:

54

> Quicken Loans' conduct in this matter is reprehensible at best. The findings and conclusions that Quicken Loans engaged in fraudulent and unconscionable conduct were definitively affirmed on appeal. There is a recklessness and inherent greed in Quicken Loans' conduct. Quicken Loans has shown no concern for any of the consequences of its' [sic] conduct. Quicken Loans' only motive in procuring Plaintiffs' mortgage loan was to turn an immediate profit and then quickly unload what it had to know would eventually be a non-performing loan, to some other entity.

The circuit court further found that Quicken "knew or should have known that the conduct that it was engaged in was illegal," that Quicken's "'chase and dump' style of making mortgage loans clearly demonstrates a business model that the Supreme Court succinctly classified as 'distasteful' and 'opportunistic,'" and that Quicken "has refused to concede that it has engaged in any improper or illegal conduct."

Quicken's argues that the reprehensibility of its conduct was low because of the isolated nature of its wrongdoing. Quicken states:

> Here, there was no physical harm, and no threat to health or safety. The conduct at issue was one-time conduct by lower-level employees, not wrongdoing that was authorized by company officers or that represented corporate policy. There was no evidence and no finding that any other borrower has been made a promise of refinancing . . . .

To the contrary, Plaintiff contends that Quicken's conduct was reprehensible because

> Quicken intentionally induced the Plaintiffs into accepting an unconscionable loan that featured unfathomable terms by making fraudulent representations and engaging in other fraudulent conduct. In reality, Quicken's sales tactics were nothing short of a con, featuring a game of bait-and-switch of

55

loan terms that culminated in the introduction of an enormous
balloon payment into the loan at closing.

Upon our review of this case, we agree with the circuit court and the Plaintiff. Quicken's conduct was reprehensible. Although Quicken correctly notes that there was no finding below that the conduct giving rise to this case extended beyond Plaintiff, and although Quicken's conduct posed no risk of physical harm to anyone, reprehensibility is not measured by those considerations alone. Syllabus point 3 of *Garnes* requires that we also take into account how long Quicken continued its actions, whether it was aware that its actions were likely to cause harm, and whether Quicken made reasonable efforts to make amends by offering a fair and prompt settlement.

The length of time in which Quicken engaged in misconduct—8 months passed between the time the Plaintiff first contacted Quicken and the time Plaintiff defaulted on the loan—weighs against Quicken. During this time, Quicken had extensive contact with Plaintiff, during which it furthered its fraudulent scheme. Furthermore, as the circuit court recognized, Quicken knew or should have known that its actions were likely to cause harm to Plaintiff, who was financially vulnerable. As we recognized in *Quicken I*, Plaintiff's financial difficulties are what led her to Quicken in the first place.[28]

---

[28] In *Quicken I*, we stated:

(continued . . .)

Quicken was aware of these difficulties and took advantage of Plaintiff's position. Finally, Quicken made no reasonable efforts to make amends in this case, continually representing below that it had not engaged in wrongdoing. This is not a close issue. The majority of reprehensibility considerations weigh against Quicken. Thus, we conclude that Quicken's conduct was reprehensible.[29]

---

> Upon the death of her mother in 2002, Plaintiff became solely responsible for paying all of the property's utilities, maintenance, taxes and insurance premiums thereon. When these financial obligations, among others, became difficult to meet, Plaintiff refinanced the subject property in August 2003, for $40,518; in January 2004, for $63,961; and in May 2005, for $67,348. She also took out four separate loans for $1,500, $3,060, $5,000 and $7,650, respectively, with interest rates ranging from 24.99% to 31.00%.
>
> In May of 2006, in an effort to consolidate her debt and lower her monthly payments, Plaintiff completed a basic on-line loan application after receiving a "pop-up" advertisement on her computer. Thereafter, she began receiving telephone calls from various lending companies, including Quicken.

230 W. Va. at 313, 737 S.E.2d at 647 (footnotes omitted).

[29] Quicken also asserted the following two assignments of error in this appeal:

> The Circuit Court deprived Quicken Loans of its right to substantive due process of law by repeatedly citing and relying on lawful conduct in supposed justification for its punitive damages award.
>
> The Circuit Court deprived Quicken Loans of due process by basing its reprehensibility finding on conduct dissimilar from that upon which liability for punitive damages

(continued . . .)

**bb. Quicken's Financial Position.** Quicken argues that the circuit court erred by considering evidence of Quicken's wealth in levying punitive damages. Additionally, Quicken asserts that to the extent that *Perrine* classifies a defendant's wealth as an aggravating factor for purposes of punitive damages, it irreconcilably conflicts with the precedent of the U.S. Supreme Court and should be overruled.

Quicken made a similar argument below, to which the circuit court responded in its June 18, 2013, order as follows:

> Quicken Loans objects "on both logical and federal constitutional grounds" to this Court considering the financial position of Quicken Loans "to the extent that this might be interpreted as allowing punitive damages to be increased based on the defendant's wealth." Quicken Loans argues that its' [sic] financial position should not be considered "an aggravating factor." This Court agrees with Quicken Loans' position on this issue. The law is clear that the wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award.

---

was premised, as well as harm or potential harm to persons other than Plaintiffs.

To the extent that we have determined that Quicken's federal substantive due process arguments have been waived, *see* discussion *supra* and note 26, we decline to address this first assignment of error. Moreover, the record in this case demonstrates that Quicken's fraudulent behavior—the behavior upon which liability for punitive damages was premised—was reprehensible, and that the conduct discussed herein—to the exclusion of conduct considered by the circuit court that may have been lawful—is sufficient to find that Quicken's conduct was reprehensible, we find it unnecessary to further examine this second assignment of error.

> This Court will consider Quicken Loans' financial position solely for the purpose of whether Quicken Loans has the ability to pay a fair and reasonable punitive damage award within the confines of *Garnes* and *TXO* [*I*]. This Court does not intend to "enhance" the punitive damages award.
>
> In addressing this factor, the [c]ourt will consider only Quicken Loans' net worth (subtracting total liabilities from total assets) to determine its "financial position."

The circuit court ordered that the summary of Quicken's financial statements be sealed.

Plaintiff argues that the circuit court did not err by considering Quicken's wealth, and it is Plaintiff's position that *Perrine* was correctly decided and is consistent with settled law. We agree with the Plaintiff on both points.

As an initial matter, we decide that it is evident from the U.S. Supreme Court's holdings in *TXO Production Corp. v. Alliance Resources Corp.* (*TXO II*), 509 U.S. 443, 454 (1993), that the U.S. Supreme Court has implicitly approved of the *Garnes* factors, accepting a defendant's wealth as a proper factor for consideration when a court sets and evaluates a punitive damages award. In *State Farm*, the U.S. Supreme Court favorably cited Justice Breyer's concurring opinion to *BMW* as follows:

> [A defendant's wealth] provides an open-ended basis for inflating awards when the defendant is wealthy . . . . That does not make its use unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other factors, such as "reprehensibility," to constrain significantly an award that purports to punish a defendant's conduct.

*State Farm*, 538 U.S. at 427–28 (citing *BMW*, 517 U.S. at 591 (Breyer, J., concurring)). The U.S. Supreme Court has never said that wealth may not be considered; it has implicitly held otherwise. However, *State Farm* clarifies that "[t]he wealth of a defendant cannot justify an otherwise unconstitutional punitive damages award." *Id.* at 427. Thus, according to the well-settled precedent, wealth is a factor that may be considered, but a defendant's wealth alone may not justify a punitive damages award.

The law also supports treating wealth as an aggravating factor—a factor that may justify increasing a punitive damages award. *Cf.* syl. pt. 4, *Lawyer Disciplinary Bd. v. Scott*, 213 W. Va. 209, 579 S.E.2d 550 (2003) ("Aggravating factors in a lawyer disciplinary proceeding are any considerations or factors that may justify an increase in the degree of discipline to be imposed."). In *Leach v. Biscayne Oil & Gas Co.*, 169 W. Va. 624, 628, 289 S.E.2d 197, 199 (1982) (quoting *Pendleton v. Norfolk & W. Ry. Co.*, 82 W. Va. 270, 277–78, 95 S.E. 941, 944 (1918)), we said:

> The object of such punishment is to deter the defendants from committing like offenses in the future, and this it may be said is one of the objects of all punishment, and we recognize that it would require, perhaps, a larger fine to have this deterrent effect upon one of large means than it would upon one of ordinary means, granting that the same malignant spirit was possessed by each.

In *Perrine*, we said that "to accomplish punishment and deterrence for . . . a wealthy company . . . , a punitive damages award must necessarily be large." 225 W. Va. at 555, 694 S.E.2d at 888. *Perrine* and our related case law are consistent with U.S. Supreme

Court precedent. While the U.S. Supreme Court forbids maintaining a punitive damages award based solely on a defendant's wealth, it does not forbid consideration of the defendant's wealth as a factor justifying an increase in a punitive damages award.

While the circuit court erred in concluding that wealth is not an aggravating factor, this error is harmless. The circuit court explicitly stated that it would not consider Quicken's wealth to enhance the punitive damages award. Instead, the circuit court said that it considered Quicken's wealth "solely for the purpose of whether Quicken Loans has the ability to pay a fair and reasonable punitive damage award." As we recognized above, consideration of wealth is appropriate, and here, because wealth did not contribute to the size of the punitive damages award, Quicken cannot support its claim that consideration of this factor contributed to the amount of the punitive damages award.

cc.    **Encouragement of Fair and Reasonable Settlements.**    Quicken contends that the circuit court misapplied this aggravating factor, arguing that the circuit court used this factor to punish it for failing to settle the case. Plaintiff argues that the circuit court correctly applied this factor, and that the factor relates to "the willingness of a defendant to make amends for its wrong." In its June 18, 2013, order, the circuit court said:

> Quicken Loans has had, and continues to have, an opportunity to resolve this matter by way of settlement. There is no evidence before this Court that it has ever shown any interest in settling this matter with the Plaintiffs. Quicken

Loans instead, as it is clearly entitled to do, chooses to do battle, to hold fast to its' [sic] position that it has done little or no wrong in this action, and has caused minimal damage. Quicken Loans chose to fully litigate this matter at trial and on appeal, and now chooses to fight on, post-appeal, as is its right. However, it can not now complain that it was somehow "vindicated" and, therefore, should not be subject to a punitive damage award. Quicken Loans did not prevail and must now face the music.

We examined this *Garnes* factor in *Perrine*. In that case, the defendant argued that its failure to settle the claims did not warrant a large punitive damages award and that the trial court's reliance on this factor to increase the award violated its right to litigate potentially meritorious defenses. *Perrine*, 225 W. Va. at 555–56, 694 S.E.2d at 888–89. In ascertaining that the defendant's arguments showed that it had misinterpreted the purpose behind the factor, the Court explained:

> This *Garnes* factor asks the reviewing court to consider whether the amount of punitive damages is appropriate to encourage fair and reasonable settlements when a clear wrong has been committed. . . . The focus of the reviewing court's consideration of whether the punitive damages award would encourage fair and reasonable settlements is on the impact it is likely to have on future litigants. That is, was the award large enough so that a future defendant who has committed a clear wrong will be encouraged to accept a fair and reasonable settlement rather than force the wronged plaintiff into litigation and risk incurring a similarly large punitive damages award.

*Id.*

Like the defendant in *Perrine*, the circuit court has misinterpreted this *Garnes* factor. However, upon our *de novo* review, we agree with the circuit court's ultimate conclusion that this factor weighs against Quicken. This case involved a large corporation with extensive assets defrauding a financially vulnerable consumer. It was therefore appropriate for the circuit court to set a punitive damages award large enough so that a future defendant in a similar situation—a large corporation with extensive assets—who has committed a clear wrong against a consumer will be encouraged to accept a fair and reasonable settlement.

**dd. Other Aggravating Factors.** As stated above, Quicken has waived any challenge to the remaining aggravating factors: whether the defendant profited from the wrongful conduct and the cost of litigation to the plaintiff. With regard to Quicken's profit from the wrongful conduct, the circuit court said:

> [T]he total potential finance charge on the Plaintiffs' mortgage loan was $520,065.00. This is an enormous potential profit, which Quicken Loans could have reaped had the Plaintiffs not instituted this litigation. While Quicken Loans never realized said profit, its' [sic] efforts to sell the loan on the secondary market clearly demonstrates Quicken Loans' intention to profit from a mortgage loan that has been conclusively found to be unconscionable and fraudulent.

Regarding the cost of litigation to Plaintiff, Plaintiff has been awarded an uncontested and substantial sum in attorney fees: $596,199.89. We conclude that both of the remaining aggravating factors weigh against Quicken and in support of the punitive damages award.

63

### ii. Mitigating Factors

**aa. Reasonable Relationship to Harm.** In syllabus point 3 of *Garnes*, 186 W. Va. 656, 413 S.E.2d 897 (in part), the Court held:

> Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater.

*See also Perrine*, 225 W. Va. at 558, 694 S.E.2d at 891 ("A punitive damages award should bear a reasonable relationship to the harm that has occurred.").

Quicken argues that "[t]he disparity between the award and the only legitimate harm in this case—less than $18,000 in restitution—is vast." Plaintiff counters that the potential harm imposed by the total finance charge is the reasonable measure of the harm. The circuit court took the position advanced by Plaintiff, finding that the total finance charge, $520,065.61, constituted the harm.

We find that the actual harm is represented by the amount awarded in restitution to Plaintiff, $17,476.72.[30] The punitive damages award represents an amount

---

[30] Because we concluded above in Part III.B.1. that the circuit court exceeded its authority by increasing the compensatory damages award following our limited remand,

(continued . . .)

more than 124 times the amount of the restitution award. However, as we held in *Garnes*, this factor requires us to consider the harm Quicken's actions would likely cause in a similar situation. In a similar situation, a consumer would be required to pay more than $520,000.00 in loan payments over the life of the loan. This harm would be grievous to a consumer who, like Plaintiff, had already been suffering financial troubles before contracting with Quicken. Moreover, the ratio of the punitive damages award to the potential harm, 4.17:1, would fall within a constitutionally acceptable range set forth in syllabus point 15 of *TXO I*, 187 W. Va. 457, 419 S.E.2d 879 ("The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1." (In part.)). We find that the relationship between the harm and the punitive damages award does not act as a mitigating factor in this case.

**bb.    Reasonable Relationship Between Punitive Damages and Compensatory Damages.**  In syllabus point 3 of *Garnes*, 186 W. Va. 656, 413 S.E.2d 897 (in part), the Court held that "[a]s a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages."

---

we have reduced the compensatory damages award to the original amount awarded in restitution by the circuit court's February 25, 2010, order to $17,476.72.

Quicken maintains that the ratio of compensatory damages in this case warrants a reduction in the punitive damages award. Plaintiff asserts that the award is not excessive. Below, the circuit court determined that because "there is insufficient evidence to find that Quicken Loans has acted with evil intention," a ceiling of a 5 to 1 ratio of punitive damages to compensatory damages was appropriate.

At the outset, we recognize that the $17,476.72[31] was awarded as restitution in this case. Because we held in syllabus point 11 of *Quicken I*, 230 W. Va. 360, 737 S.E.2d 640, that "[a]ttorneys fees and costs awarded under West Virginia Code § 49A-5-104 (1994) of the [WVCCPA] shall be included in the compensatory to punitive damages ratio" we now add $596,199.89—the amount representing attorney fees and costs awarded pursuant to the circuit court's Feburary 17, 2011, order[32]—to the $17,476.72 restitution figure. The resulting amount, $613,676.61, represents the total compensatory damages award, for purposes of examining the compensatory to punitive damages ratio. To determine whether the ratio exceeds the bounds of due process, we must compare the

---

[31] *See supra* note 30.

[32] As established above in Part III.B.2, the circuit court erred by awarding attorney fees and costs for the appellate and post-appellate proceedings. Further, as we determined in Part III.B.3.a., the circuit court erred by increasing the amount of punitive damages awarded on remand based on attorney fees it ordered on remand. Thus, only the attorney fees awarded in the original proceeding before the circuit court are now considered.

compensatory damages to the punitive damages awarded in this case, $2,168,868.75.[33]

The resulting ratio of punitive damages to compensatory damages is 3.53 to 1.

In syllabus point 15 of *TXO I*, 187 W. Va. 457, 419 S.E.2d 870, the Court

held that

> [t]he outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not *per se* unconstitutional.

In *Perrine*, the Court explained that "greater or lesser ratios would be entirely appropriate

in circumstances where the compensatory damages are either very large or negligible."

225 W. Va. at 557, 694 S.E.2d at 890.

We agree with the circuit court's conclusion that the 5 to 1 ratio provided

by syllabus point 15 of *TXO I* is the proper upper limit for the award of punitive damages

in this case, and we conclude that the 3.53 to 1 ratio falls under that limit. Moreover,

because the multiplier is in the low single digits, there is a presumption that the award is

reasonable and proportional.

---

[33] In accordance with our discussion in Part III.B.3.a., the circuit court erroneously increased the punitive damages award, and so we now utilize a reduced amount, $2,168,868.74, which is the amount originally awarded by the circuit court's February 17, 2011, order.

Additionally, we conclude that the relationship between the punitive damages and compensatory damages is fair and does not act as a mitigating factor in this case. While Quicken notes that the ratio between the punitive damages award and the restitution award—124.10:1—should act as a mitigating factor, this ratio ignores the substantial resources Plaintiff expended in pursuing her successful claim: $596,199.89 in attorney fees and costs.

**dd. Other Mitigating Factors.** Quicken has not argued that the remaining mitigating factors listed in syllabus point 7 of *Perrine*, 225 W. Va. 482 S.E.2d 815—the cost of litigation to the defendant, any criminal sanctions imposed on the defendant for its conduct, any other civil actions against the same defendant based on similar conduct, relevant information that was not available to the jury because it was unduly prejudicial to the defendant, and additional relevant evidence—warrant the reduction of the punitive damages award. Thus, in accord with syllabus point 5 of *Garnes*, 186 W. Va. 656, 413 S.E.2d 897, these factors are deemed waived, and no reduction of the punitive damages award is appropriate with respect to these factors. We note that of the factors considered by the circuit court, the circuit court deemed them irrelevant.

### iii. Reduction Is Not Warranted

Application of the aggravating and mitigating evidence in this case supports the full punitive damages award. Quicken presented no mitigating evidence that would warrant remittitur. *Cf. Perrine*, 225 W. Va. at 559–60, 694 S.E.2d at 892–93 (finding that the defendant was entitled to remittitur based on mitigating evidence). We conclude that Plaintiff is entitled to $2,168,868.75 in punitive damages.

### C. Offset

In syllabus point 5 of *Board of Education of McDowell County v. Zando, Martin & Milstead, Inc.*, 182 W. Va. 597, 390 S.E.2d 796 (1990), we held, "'"Where a payment is made, and release obtained, by one joint tort-feasor, the other joint tort-feasors shall be given credit for the amount of such payment in the satisfaction of the wrong." Point 2, Syllabus, *Hardin v. The New York Central Railroad Company,* 145 W.Va. 676 [116 S.E.2d 697 (1960) ].' Syllabus Point 1, *Tennant v. Craig,* 156 W.Va. 632, 195 S.E.2d 727 (1973)." We reasoned that the purpose of requiring awards to be offset by settlements with other defendants is that "a plaintiff is entitled to one, but only one, complete satisfaction for his injury." *Zando*, 182 W. Va. at 604, 390 S.E.2d at 803. In other words, offset prevents a plaintiff from receiving a double recovery for his/her injury. In *Quicken I*, we determined that Quicken is "entitled to a credit for the settlement between Plaintiff and the appraisal defendants," 230 W. Va. at 334, 737 S.E.2d at 668, but in accord with syllabus point 1 of *Burgess v. Porterfield*, 196 W. Va. 178, 469 S.E.2d

114 (1996), quoted *infra*, we held that of the compensatory and punitive damages awards, only the compensatory damages award is subject to offset by the pretrial settlement.

The parties disagree as to whether Quicken is entitled to have the attorney fees and costs award offset by the $700,000 pretrial settlement between Plaintiff and codefendants Appraisals Unlimited, Inc. and appraiser Dewey Guida. Quicken argues that the attorney fees and costs award should be considered compensatory damages for offset purposes, and Plaintiff argues to the contrary.

In its June 18, 2013, order, the circuit court stated that

> [w]hile the Supreme Court held that attorney fees and costs are "compensatory in nature" and shall be used in considering the punitive damages to compensatory damages ratio in this matter, the Supreme Court did not address the issue of whether an award of attorney fees and costs under a fee-shifting statute, such as the WVCCPA, were fully compensatory damages subject to an offset for a prior settlement.

In deciding the issue, the circuit court looked to a decision of the Second Circuit of the United States Court of Appeals in *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884 (2nd Cir. 1988). In that case, the Second Circuit said:

> [D]efendants have argued that their obligation to pay plaintiffs' attorneys' fees should be reduced by the amount that plaintiffs received in settlement of these antitrust claims from other alleged coconspirators. We have considerable doubt as to the availability of such relief, since the statutory provision for an award of attorneys' fees is designed to protect a damage award from the inroads such fees would

70

otherwise make, . . . and granting such an offset would penalize the pursuit of valid legal claims by a plaintiff who could establish that the nonsettling defendants were liable to it but could not sufficiently prove a high amount of damages.

850 F.2d at 893–94 (internal citations omitted). Relying on *Auwood*, the circuit court concluded

> that where attorney fees and costs are awarded for fraud and unconscionable conduct in violation of the WVCCPA, a prior settlement should **not** impact the Plaintiffs' ability to recover said attorney fees and costs. To permit so would be contrary to the clearly stated legislative and public policy of enabling Plaintiffs to pursue legal actions were [sic] statutes have been violated and of ensuring effective access to the legal system and would have a chilling effect on said policy.

Quicken contends that the circuit court committed error by failing to offset the attorney fees award against Plaintiff's pretrial settlement. Quicken asserts that because this Court determined in syllabus point 11 of *Quicken I*, 230 W. Va. 306, 737 S.E.2d 640, that "[a]ttorneys fees and costs awarded under West Virginia Code § 46A-5-104 (1994) of the [WVCCPA] shall be included in the compensatory to punitive damages ratio in cases where punitive damages are available," attorney fees and costs should be considered compensatory damages subject to offset.[34]

---

[34] Quicken challenges this holding in this appeal, arguing that the use of attorney fees and costs "as a supposed justification to *enhance* punitive damages is illogical and unconstitutional." We have held that "[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine

(continued . . .)

Plaintiff argues that Quicken has waived this issue because Quicken did not raise the issue in its first appeal. Plaintiff further represents that Quicken is judicially estopped from arguing that it is entitled to have the attorney fees and costs award offset by the pretrial settlement because Quicken's position in the first appeal was that an award of attorney fees and costs is punitive in nature, not compensatory, and that an attorney fees and costs award should not be included in the compensatory to punitive damages ratio. Plaintiff submits that Quicken's assertion in its brief in *Quicken I* that it was paying Plaintiff's attorney fees resulted in Quicken obtaining a favorable result before the Court: remand to review the punitive damages award.

---

of stare decisis, which is to promote certainty, stability, and uniformity in the law." Syl. pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). Quicken has not presented any evidence of changing conditions or serious judicial error that would warrant overruling syllabus point 11 of *Quicken I*. Therefore, we decline to overrule this syllabus point.

Quicken also asserts that pursuant to due process, which requires advance notice of conduct for which a state may impose a punishment or penalty for misconduct, syllabus point 11 of *Quicken I* should apply prospectively. We disagree. Prior to *Quicken I*, an examination of our law would have alerted Quicken that no prior West Virginia authority had addressed the issue decided in syllabus point 11 of *Quicken I*. Upon engaging in the misconduct, Quicken was on notice that the Court might rule as it did, particularly in light of similar decisions in other jurisdictions. *See Quicken I*, 230 W. Va. at 330–33, 737 S.E.2d at 664–67 (describing similar cases). Syllabus point 11 of *Quicken I* applies to the present case.

Upon our careful review of the record, we disagree with Plaintiff's assertion that Quicken has waived its argument with regard to this assignment of error. After the circuit court entered its February 25, 2010, order, which originally decided the case, Quicken filed a motion requesting "a dollar-for-dollar offset against the judgment in this case for any amounts paid in settlement" by the settling codefendants. The circuit court summarily denied this motion by order dated May 2, 2011. On appeal to this Court, Quicken alleged that it "is entitled to an offset of all compensatory damages." At no point did Quicken limit its argument such as to exclude the consideration of attorney fees as compensatory damages subject to offset.

We also disagree with Plaintiff's contention that Quicken is judicially estopped from arguing that it is entitled to have the attorney fees and costs award offset by the pretrial settlement.

> The doctrine of "[j]udicial estoppel is a common law principle which precludes a party from asserting a position in a legal proceeding inconsistent with a position taken by that party in the same or a prior litigation." *In re C.Z.B.,* 151 S.W.3d 627, 633 (Tex.Ct.App.2004). Under the doctrine, a party is "generally prevent[ed] . . . from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 2154, n. 8, 147 L.Ed.2d 164, 180 n. 8 (2000).

*W. Va. Dep't of Transp., Div. of Highways v. Robertson*, 217 W. Va. 497, 504, 618 S.E.2d 506, 513 (2005); *see also* 28 Am. Jur. 2d *Estoppel and Waiver* § 67 (2014). We held in syllabus point 2 of *Robertson*, 217 W. Va. 497, 618 S.E.2d 506, that

[j]udicial estoppel bars a party from re-litigating an issue when: (1) the party assumed a position on the issue that is clearly inconsistent with a position taken in a previous case, or with a position taken earlier in the same case; (2) the positions were taken in proceedings involving the same adverse party; (3) the party taking the inconsistent positions received some benefit from his/her original position; and (4) the original position misled the adverse party so that allowing the estopped party to change his/her position would injuriously affect the adverse party and the integrity of the judicial process.

Not all four prongs of syllabus point 2 of *Robertson* are met in this case so as to implicate judicial estoppel. Specifically, the third prong contains the language dispositive to this case; judicial estoppel does not apply to bar Quicken's argument before us now because Quicken received no benefit by arguing that an award of attorney fees and costs is punitive in nature. The Court disagreed with that position in *Quicken I*, ruling against Quicken, *see* syl. pt. 11, *Quicken I*, 230 W. Va. 306, 737 S.E.2d 640, and so Quicken is not barred from taking an alternate position supporting its assignment of error regarding offset in this appeal.

Furthermore, we disagree with Plaintiff's contention that this Court in *Quicken I* remanded the case on the basis of Quicken's assertion that it was paying Plaintiff's attorney fees. In *Quicken I*, we did not reach the merits of the punitive damages claim because the circuit court's order lacked the necessary analysis and findings required by *Garnes* that would allow the Court to conduct a meaningful and

74

adequate review of the punitive damages award. *Quicken I*, 230 W. Va. at 330, 737 S.E.2d at 664.

As stated above, the circuit court determined that attorney fees and costs should not be subject to offset by a pretrial settlement amount. In *Quicken I*, we did not explicitly state that attorney fees are compensatory in nature for purposes of offset. Instead, our focus was on the broader question of whether the circuit court erred by failing to offset the compensatory damages award against the pretrial settlement.

Although we did not address whether an award of attorney fees and costs is compensatory in nature for purposes of offset in *Quicken I*, we did address whether an award of attorney fees and costs is compensatory in nature for purposes of calculating punitive damages. In deciding *Quicken I*, we explored the purpose of the fee-shifting provision in the WVCCPA. We compared our statute to similar consumer credit fee-shifting provisions in other jurisdictions, to similar fee-shifting provisions in the West Virginia Code, and to similar provisions in other jurisdictions. *Id.* at 331, 737 S.E.2d at 665. Our evaluation led us to conclude that "in general, fee-shifting statutes are compensatory and not punitive in nature," *id.* at 332, 737 S.E.2d at 666, and we held that attorney fees and costs awarded pursuant to the WVCCPA should be included in the compensatory-to-punitive damages ratio for calculation of punitive damages, where available. Syl. pt. 11, *Quicken I*, 230 W. Va. 306, 737 S.E.2d 640. Our holding

75

necessarily implies that attorney fees and costs awarded pursuant to the WVCCPA, which are compensatory in nature, should be considered part of a compensatory damages award for the purpose of calculating punitive damages.

In syllabus point 1 of *Burgess*, 196 W. Va. 178, 469 S.E.2d 114, we held, "Defendants in a civil action against whom awards of compensatory and punitive damages are rendered are entitled to a reduction of the compensatory damage award, but not the punitive damage award, by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties." Because *Quicken I* implicitly established that an award of attorney fees and costs pursuant to the WVCCPA should considered part of a compensatory damages award, under *Burgess*, offset should apply to the award of attorney fees and costs. For clarity, we now hold that attorney fees and costs awarded under W. Va. Code § 46A-5-104 (1994) of the West Virginia Consumer Credit and Protection Act are compensatory in nature and shall be subject to offset by the amount of any good faith settlements previously made with the plaintiff by other jointly liable parties.

Obviously, our holding is inconsistent with the circuit court's conclusion and its reliance on *Auwood*. *Auwood* has no bearing on this case because the controlling

76

statute in that case, 15 U.S.C. § 15 (1982) of the Sherman Antitrust Act,[35] and the controlling statute in this case, W. Va. Code § 46A-5-104 of the WVCCPA, are too dissimilar in purpose for comparison. According to *International Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1274 (6th Cir. 1980), "[t]he purpose of the fees award under 15 U.S.C. § 15 is to insure that a successful plaintiff in an antitrust action does not have its treble damage recovery unduly diminished by the payment of fees to its attorneys." The purpose of the WVCCPA, on the other hand, is to "protect consumers from unfair, illegal and deceptive business practices," *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 151, 706 S.E.2d 63, 72 (2010), and W. Va. Code § 46A-5-104 furthers that purpose by allowing for the recovery of attorney fees and costs in pursuing claims under the Act applying to illegal, fraudulent or unconscionable conduct, or a prohibited debt collection practice.  Because of the dissimilarities between the two statutes, they are not comparable, and thus the circuit court's reliance on *Auwood* is misplaced.

We conclude that the circuit court erred by declining to offset the award of attorney fees and costs by the amount of Plaintiff's pretrial settlement. We therefore

---

[35] 15 U.S.C. § 15 (1982) states, in pertinent part:

> (a) . . . [A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover . . . reasonable attorney's fee."

77

remand this case and direct the circuit court to offset the total compensatory damages award, which in this case includes attorney fees and costs, by the amount of Plaintiff's pretrial settlement.

## IV.  CONCLUSION

For the reasons set forth in this opinion, the June 18, 2013, order of the circuit court is reversed and remanded with directions.

First, we reverse the portion of the circuit court's order creating a lien on Plaintiff's property. We remand with directions to the circuit court to order that the loan principal be returned to Quicken by deducting the amount of the loan principal from Plaintiff's recovery in this case, which includes compensatory and punitive damages.

Second, we reverse the circuit court's award of an additional $98,800 in compensatory damages to Plaintiff pursuant to W. Va. Code § 33-17-17(c). Accordingly, we reduce the compensatory damages award to $17,476.72.

Third, we reverse the circuit court's award of attorney fees and costs for both the first appellate proceeding and the post-appellate proceedings. Consequently, we reduce the total amount of attorney fees to which Plaintiff is entitled to $596,199.89. The parties shall bear their own attorney fees and costs for the present appeal.

78

Fourth, we reverse the circuit court's increase in the punitive damages award, and we reduce the amount of that award to $2,168,868.75. Having determined that the $2,168,868.75 award is not excessive, we remand with directions to the circuit court to award $2,168,868.75 in punitive damages to Plaintiff.

Fifth and finally, we reverse the circuit court's order refusing to offset Plaintiff's award of attorney fees and costs by the $700,000 pretrial settlement between Plaintiff and codefendants Appraisals Unlimited, Inc. and appraiser Dewey Guida. We remand the case with directions to the circuit court to offset the award of compensatory damages and attorney fees and costs by the amount of the pretrial settlement.

Reversed and remanded with directions.