No. 13-1084 -      *Constellium Rolled Products Ravenswood, LLC and Melvin Lager v. Sharon Griffith and Lou Ann Wall*

**FILED**

**June 10, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Justice, joined by Workman, Chief Justice, concurring, in part, and dissenting, in part:

While I agree with the plurality's resolution of the issue in the case *sub judice* affirming Constellium's liability for a hostile work environment, I disagree with the portion of the opinion concluding that the facts were insufficient to support an award of punitive damages. Because I believe there was adequate evidence to support the jury's decision on punitive damages, I respectfully dissent from the plurality's contrary conclusion.

In its decision of this case, the plurality correctly deferred to the jury's conclusion that Constellium subjected Ms. Griffith and Ms. Wall to a hostile work environment based on their gender. This result is in accord with the applicable legal precedent. *See* Syl. pts. 5 and 8, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995) (setting forth factors to establish a claim based upon hostile work environment and reiterating employers' duty to ensure workplaces free of sexual harassment). Over a three-day period, the jury heard all of the conflicting facts in this case. This Court, in the majority, correctly respected the work of the citizens of Jackson County, West Virginia, and affirmed their decisions as to Constellium's liability for a hostile work environment. The jury verdict was based on weighing the evidence, resolving questions of fact, and making credibility

1

determinations – such conclusions that are in the exclusive province of the jury. *See* Syl. pt. 2, *Skeen v. C & G Corp.*, 155 W. Va. 547, 185 S.E.2d 493 (1971) ("It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed."). Thus, I concur with the plurality opinion's confirmation of the jury's determination that Constellium was liable for the hostile work environment suffered by both Ms. Griffith and Ms. Wall.

The plurality opinion departs from logic, however, when the majority reverses the punitive damages award in a short-shrift two-paragraph discussion. In this brief two paragraphs, the majority totally ignores the well-established law in this State on punitive damages and jury awards. Instead, the majority relies upon the United States Supreme Court's decision in *Kolstad v. American Dental Association*, 527 U.S. 526, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999), with no discussion of that case, to support its decision to reverse the jury award of punitive damages because the respondents "failed to meet the higher standard required of plaintiffs in order to qualify for punitive damages under the Human Rights Act." The majority then summarily determines that "[t]he evidence in this case simply fails to indicate the kind of repeated and continuing wrongdoing by the employer that demonstrates the employer's criminal indifference to the rights of women in the workplace recognized by the Human Rights Act."

This reasoning defies both the facts and the law – especially in light of the fact that the jury was properly instructed on punitive damages,[1] and the jury surmised that Ms. Griffith and Ms. Wall were entitled to receive punitive damages based on the evidence presented. Further, Constellium filed post-trial motions, including a request for a review of the punitive damages award. The trial court conducted a hearing, resulting in the final appealable order, which stated: "[f]rom this evidence and all the other evidence adduced at trial, this jury, being a rational trier of fact, had sufficient evidence before it to conclude that [Constellium's] conduct was reprehensible and warranted the imposition of punitive damages." My personal review of the appendix record submitted on appeal, including the resultant order of the circuit court, convinces me that the lower court properly considered all of the relevant factors in its review of the punitive damages award, and, accordingly, such award was proper.

This Court's guiding principles regarding punitive damages are stated as follows:

> Our punitive damage jurisprudence includes a two-step paradigm: first, a determination of whether the conduct of an actor toward another person entitles that person to *a* punitive damage award under *Mayer v. Frobe*, 40 W. Va. 246, 22 S.E. 58 (1895); second, if a punitive damage award is justified, then a

---

[1]Indeed, while Constellium objected to the issue of punitive damages before the trial court, no objections were made to the actual content of the jury instructions regarding the same.

review is mandated to determine *if the* punitive damage award is excessive under *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991).

Syl. pt. 7, *Alkire v. First Nat'l Bank of Parsons*, 197 W. Va. 122, 475 S.E.2d 122 (1996). Therefore, the first consideration is whether the conduct at issue herein is sufficient to expose Constellium to punitive damages for its actions toward Ms. Griffith and Ms. Wall.

Our well-settled law states that "[i]n actions of tort, where gross fraud, malice, oppression, or wanton, willful, or reckless conduct or criminal indifference to civil obligations affecting the rights of others appear, or where legislative enactment authorizes it, the jury may assess exemplary, punitive, or vindictive damages; these terms being synonymous." Syl. pt. 4, *Mayer v. Frobe*, 40 W. Va. 246, 22 S.E. 58 (1895). Moreover, we have held that "the recovery of both emotional distress damages (where such distress, of course, is proven) and punitive damages (where the employer's misconduct is sufficiently egregious to meet the standards established in our punitive damages jurisprudence) has been held to be authorized in employment law cases generally." *Sheetz Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 209 W. Va. 318, 337, 547 S.E.2d 256, 275 (2001).

With respect to this specific case, the CEO's intentional publication of the comment cards with identifiable and derogatory information regarding Ms. Griffith and Ms. Wall, along with the posted responses that failed to repudiate the disparaging and sexist

4

nature of the comments, illustrates reprehensible conduct. Additionally, Constellium made no attempt to determine who had made the negative comments and, further, failed to discipline the author or take ANY actions once the author confessed. The gender-based language in the comment cards imposes upon Constellium a duty to investigate and take effective action to correct the problem. *See* Syl. pt. 3, in part, *Fairmont Speciality Servs. v. West Virginia Human Rights Comm'n*, 206 W. Va. 86, 522 S.E.2d 180 (1999) ("When such instances of aggravated discriminatory conduct occur, the employer must take swift and decisive action to eliminate such conduct from the workplace.").

While Constellium seeks to frame this case as one in which there was no harm, such an argument fails based upon the evidence. Ms. Griffith and Ms. Wall endured a hostile work environment that was, in part, created or added to by the CEO's responses to gender-based slurs toward the respondents. Not only did the CEO's statements actively participate in the degeneration of the work environment, but also, the CEO's reaction seemed to confirm the slurs contained in the original complaints. Forty-three comments and responses were posted at the same time, including the relevant three comments in the present case. The majority of these comments did not involve gender at all. Only four comments used gender-specific information – the three at issue herein and one comment that was directed toward a male. In the one instance where male gender was designated, no gender-based slurs were in the comment. The CEO's response thereto, however, was to chastise the commenter and

5

to state that everyone needs to respect each other. Conversely, the only gender-based epithets were directed at Ms. Griffith and Ms. Wall. Notwithstanding the gender slurs in the comment cards, the CEO's responses seemed to scold the women and stated that they all needed to be a team player. The response to the comment encouraged the women to be "fully engaged and productive" as opposed to any attempt to correct or ameliorate the poor language used by the commenter.

Importantly, Constellium's argument that Ms. Griffith and Ms. Wall were not harmed by the work environment completely ignores the facts. The trial testimony was that the women were shunned by their coworkers, either through being ignored completely or through employees changing lunch rooms to avoid contact. The evidence also showed that other workers passed around copies of the comments and responses and taped them to shower walls. The women also felt that the men no longer wanted to work with them and that they were scheduled to work only with each other. Notably, one of the women was injured while at work because she did not have a fire watch while she was welding. Ms. Griffith and Ms. Wall have experienced this negative environment for the entire tenure of this litigation. Importantly, the jury was presented with evidence regarding the nature of the harms experienced by Ms. Griffith and Ms. Wall following the decline in their employment situation. The evidence at trial was sufficient for the jury to reasonably find that Constellium's actions warranted an award of punitive damages, and this Court's review

should have reached the same result.

Had the majority of this Court correctly determined that punitive damages were appropriately assessed against Constellium, we would then "examine the amount of the award pursuant to the aggravating and mitigating criteria set out in *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991), and the compensatory/punitive damage ratio established in *TXO Production Corp. v. Alliance Resources Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992)." Syl. pt. 6, in part, *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W. Va. 482, 694 S.E.2d 815 (2010). In considering the amount of the punitive damages to award, the trial court properly instructed the jury on all factors to consider.[2] Upon

[2]*See* Syl pt. 3, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991) ("When the trial court instructs the jury on punitive damages, the court should, at a minimum, carefully explain the factors to be considered in awarding punitive damages. These factors are as follows: (1) Punitive damages should bear a reasonable relationship to the harm that is likely to occur from the defendant's conduct as well as to the harm that actually has occurred. If the defendant's actions caused or would likely cause in a similar situation only slight harm, the damages should be relatively small. If the harm is grievous, the damages should be greater. (2) The jury may consider (although the court need not specifically instruct on each element if doing so would be unfairly prejudicial to the defendant), the reprehensibility of the defendant's conduct. The jury should take into account how long the defendant continued in his actions, whether he was aware his actions were causing or were likely to cause harm, whether he attempted to conceal or cover up his actions or the harm caused by them, whether/how often the defendant engaged in similar conduct in the past, and whether the defendant made reasonable efforts to make amends by offering a fair and prompt settlement for the actual harm caused once his liability became clear to him. (3) If the defendant profited from his wrongful conduct, the punitive damages should remove the profit and should be in excess of the profit, so that the award discourages future bad acts by the defendant. (4) As a matter of fundamental fairness, punitive damages should bear a reasonable relationship to compensatory damages. (5) The financial position of the

(continued...)

Constellium's request that the punitive damages award be reviewed, the trial court held a hearing and set forth a written order considering all of the pertinent law, and affirmed the jury's award.[3] This Court's review of the punitive damages award should have resulted in an affirmation of the same.[4] This Court recently reaffirmed the viability of the *Garnes* factors in determining whether a punitive damages award is excessive. *See generally Quicken Loans, Inc. v. Brown*, No. 13-0764, __ W. Va. __, __ S.E.2d __, 2014 WL 6734107 (Nov. 25, 2014).

---

[2](...continued) defendant is relevant.").

[3]*See* Syl. pt. 4, *Garnes*, 186 W. Va. 656, 413 S.E.2d 897 ("When the trial court reviews an award of punitive damages, the court should, at a minimum, consider the factors given to the jury as well as the following additional factors: (1) The costs of the litigation; (2) Any criminal sanctions imposed on the defendant for his conduct; (3) Any other civil actions against the same defendant, based on the same conduct; and (4) The appropriateness of punitive damages to encourage fair and reasonable settlements when a clear wrong has been committed. A factor that may justify punitive damages is the cost of litigation to the plaintiff. Because not all relevant information is available to the jury, it is likely that in some cases the jury will make an award that is reasonable on the facts as the jury know them, but that will require downward adjustment by the trial court through remittitur because of factors that would be prejudicial to the defendant if admitted at trial, such as criminal sanctions imposed or similar lawsuits pending elsewhere against the defendant. However, at the option of the defendant, or in the sound discretion of the trial court, any of the above factors may also be presented to the jury.").

[4]*See* Syl. pt. 5, *Garnes*, 186 W. Va. 656, 413 S.E.2d 897 ("Upon petition, this Court will review all punitive damages awards. In our review of the petition, we will consider the same factors that we require the jury and trial judge to consider, and all petitions must address each and every factor set forth in Syllabus Points 3 and 4 of this case with particularity, summarizing the evidence presented to the jury on the subject or to the trial court at the post-judgment review stage. Assignments of error related to a factor not specifically addressed in the petition will be deemed waived as a matter of state law.").

As a final matter, the ratio of compensatory damages to punitive damages is 1 to 1, which is well-within acceptable limits. *See* Syl. pt. 15, *TXO Prod. Corp. v. Alliance Res. Corp.*, 187 W. Va. 457, 419 S.E.2d 870 (1992), *aff'd*, 509 U.S. 443, 113 S. Ct. 2711, 125 L. Ed. 2d 366 (1993) ("The outer limit of the ratio of punitive damages to compensatory damages in cases in which the defendant has acted with extreme negligence or wanton disregard but with no actual intention to cause harm and in which compensatory damages are neither negligible nor very large is roughly 5 to 1. However, when the defendant has acted with actual evil intention, much higher ratios are not *per se* unconstitutional."). Each respondent was awarded $250,000 in compensatory damages and $250,000 in punitive damages. Such a result was well-supported by the facts, and the jury was reasonable in its conclusions. From this Court's contrary conclusion involving the initial question of the availability of punitive damages, I respectfully dissent.

Accordingly, I concur in the majority's resolution of the issues regarding Constellium's liability for exposing Ms. Griffith and Ms. Wall to a hostile working environment, but I respectfully dissent from its rejection of the punitive damages award. I am authorized to state that Chief Justice Workman joins me in this separate opinion, concurring, in part, and dissenting, in part.